JOHN FEHNRICH, BY HIS NEXT FRIEND, EMILIE FEHN-
RICH, v. THE MICHIGAN CENTRAL RAIL-
ROAD COMPANY.

*Railroad companies—Trespasser—Contributory negligence.*

1. Under our own decisions, this case should have gone to the
jury; citing *Railroad Co. v. Van Steinburg*, 17 Mich. 100;
*Hassenyer v. Railroad Co.*, 48 Id. 205; *Cooper v. Railway Co.*,
66 Id. 261.

2. The following propositions are summarized from the opinion of
Mr. Justice MORSE, in which McGRATH and LONG, JJ., con-
curred:

*a*—The ownership of a railroad company in its tracks upon a
public street crossing is not such as to make a man a tres-
passer unless he travels squarely across them.

*b*—If the language used in the majority opinion in *Kelly v.
Railroad Co.*, 65 Mich. 186, is to be so construed that a man,
while walking in the street, cannot go diagonally across a rail-
road crossing, or, if he wishes to leave the street at that point,
cannot walk between the tracks in so doing, without being a
trespasser, I must respectfully decline to be bound by it.

*c*—It has never yet, I think, been announced as negligence
*per se* to cross a railroad track in a public highway either in
the front or rear of a standing engine and tender; and whether
it is negligence to turn one's back upon the rear of such engine
and tender, and take a few steps away from them (walking
between the tracks), seems to me to depend upon the circum-
stances of the particular case in which it is done, and, if so,
the determination of the question is very appropriately one for
a jury.

*d*—One put suddenly in peril is not imperatively required to
do that which, after the peril is ended, it is seen he might
have done and escaped. The law makes allowance for the
fright and lack of coolness of judgment incident to such a
peril.

Error to Jackson. (Peck, J.) Argued June 12, 1891.
Decided October 9, 1891.

Negligence case.    Plaintiff brings error.    Reversed.
The facts are stated in the opinions.

*Dwight D. Root,* for appellant, contended for the doctrine of the majority opinion, and relied upon the cases therein cited.

*Parkinson & Day* (*Henry Russel* and *Ashley Pond,* of counsel), for defendant, contended:

1. One using a railroad track as a highway is a trespasser, and the company does not owe him the duty it does to a traveler upon a highway at a railroad crossing; citing *Kelly v. Railroad Co.,* 65 Mich. 187, 190–192.

2. In support of the claim of contributory negligence on the part of plaintiff, counsel cited *Railroad Co. v. Miller,* 25 Mich. 274, 283; *Railroad Co. v. Coleman,* 28 Id. 440, 447; *Railroad Co. v. Campau,* 35 Id. 468; *Railway Co. v. Smith,* 46 Id. 504, 510; *Bresnahan v. Railroad Co.,* 49 Id. 410; *Mahlen v. Railway Co.,* Id. 585, 590; *Pzolla v. Railroad Co.,* 54 Id. 274, 277; *Ecliff v. Railway Co.,* 64 Id. 202, 203; *Mynning v. Railroad Co.,* Id. 101, 67 Id. 678, 682; *Freeman v. Railway Co.,* 74 Id. 86, 94–98; *Gebhard v. Railway Co.,* 79 Id. 586, 588; *Guta v. Railway Co.,* 81 Id. 291; *Brady v. Railroad Co.,* Id. 618–624; *Apsey v. Railroad Co.,* 83 Id. 441; *Improvement Co. v. Stead,* 95 U. S. 161; Beach, Cont. Neg. pp. 181–195.

3. One injured in crossing a railroad track is *prima facie* in fault, and must show affirmatively that his fault and negligence did not contribute to the injury in order to recover; citing *Railway Co. v. Howard,* 124 Ind. 280; and in such cases negligence on the part of the defendant must be shown as the efficient cause of the injury, without contributory fault in the plaintiff; citing *Railway Co. v. Smith,* 46 Mich. 504; *Brown v. Railway Co.,* 49 Id. 153; *Henry v. Railway Co.,* Id. 495; *Mitchell v. Railway Co.,* 51 Id. 238.

MORSE, J.   The plaintiff, a boy about 14 years of age when the accident happened, brought this suit to recover damages for injuries received by him while upon defendant's track in a public street in the city of Jackson. The court took the case from the jury on the ground of the contributory negligence of the plaintiff.

The injury occurred September 19, 1887.   The boy

could not speak or understand English very well, having arrived in this country from Germany in the latter part of July, 1887. He was 14 years of age in June of that year. He was living with his uncle, and had started to go to his place of work in the north-western part of the city. He was hurt while crossing the railroad tracks on Park avenue. There are several tracks crossing the street at this point. As he approached the crossing, he saw an engine and tender on the east side of the street, and close to it, standing still, and one man with it. The tender was nearest the street, and there was some testimony tending to show that the tender stood in the street. He was walking nearly in the center of the street, intending, as he says, to cross the tracks, passing around the east end of the depot out on Main street, thence westerly and north-westerly to his work; but changed his mind while crossing the tracks, and concluded to go from the street he was on to Main street, along the platform on the south side of the depot. As this thought came in his mind, he stepped between the rails of the track upon which was this engine and tender, and, with his back to the tender, took two or three steps up the track to the west. While he was on the track the engine backed up, started quickly, and came towards him. When he saw it, he says he was "rattled," and jumped first to the left and then to the right. The tender caught him by the heel. He was dragged some distance. One leg was cut off, the other foot was crushed, and he received some other injuries. He testified that no whistle was blown or bell rung before the engine started, and he did not hear it coming until it was right upon him. In this he is corroborated by two witnesses, —one who was a switchman in the employ of the defendant at the time of the accident, and the other also a switchman. Both saw the accident, and testified that no

whistle was blown or bell rung when the engine backed upon plaintiff. One said: "The engine is pretty quick. It responds quickly to the action of the engineer. A yard-engine is quicker than an engine used to pull trains."

Park avenue runs in a northerly and southerly direction, and the passenger or station house of the defendant extends out into what would be such avenue if it ran in a straight course. But north of the railroad crossing it bears to the east, and passes around the station-house. Main street intersects Park avenue about 16 rods north of the east end of the passenger-house, and also crosses the railroad tracks a short distance north-westerly of the passenger-house or depot, and about 20 rods north-westerly of Park-avenue crossing; the said tracks, Park avenue, and Main street forming a triangle. There was no sidewalk along the west side of Park avenue next the depot building, and no platform on the east end of said building, but one on the south side. Therefore, when the plaintiff started to change his direction, he was taking a shorter cut, and was also influenced probably by this platform.

It is contended, in support of the direction of the circuit judge, that the plaintiff had lived in Germany, in a town where there was a railroad; that he knew the danger of a railroad crossing; that he was a boy of average intelligence, and had no business to turn his back to the engine and walk upon the track as he did; that this was not ordinary prudence.

It is also claimed that he was a trespasser upon defendant's tracks. This claim is based upon the fact that, although in a public highway, he had turned to go off from it, and was using the street, not as a traveler along and upon Park avenue, but was taking the track

87 MICH.—39.

of the company to get off the street on a more direct route than the avenue to his work, and was traveling without reference to the public streets. It is said in the brief: "If in coming along the street onto defendant's tracks he enjoyed the rights of a traveler, he had ceased to exercise those rights."

I think the plaintiff had an undoubted right to use this street for the purpose of travel to his work, and he would not be a trespasser in walking upon any part of it, or in getting off of it in any direction or way that he saw fit. He might be negligent in walking between the tracks of the defendant, but he could not be a trespasser while in the pursuit of his lawful business. I do not understand that the defendant has such an ownership in its tracks upon a public street crossing that a man is a trespasser unless he travels squarely across them.

The case of *Kelly v. Railroad Co.*, 65 Mich. 186, is relied upon to sustain this claim that the plaintiff was trespassing upon the defendant's right of way at the time he was run over. In that case, Kelly was not using the highway as the plaintiff was. It is true, he was struck while on Vinewood avenue, but he had not entered the avenue for the purposes of travel. He was simply crossing the street because it came in his way while he was traveling on the railroad track, when he knew that men had been placed at the crossings to warn people from traveling on the railroad tracks. Kelly left his home, and chose his route upon the railroad track, and had traveled upon it from a quarter to half a mile before he reached Vinewood avenue, and contemplated walking beyond the crossing upon the track to the shops where he worked. He was traveling on the track, and not on the street. "His meeting the engine at that particular spot was a mere coincidence." If the language used in

the majority opinion in the Kelly case is to be so con-
strued that a man, while walking in the street, cannot
go diagonally across a railroad crossing, or, if he wishes
to leave the street at that point, cannot walk between
the railroad tracks in so doing, without being a tres-
passer, then I must respectfully decline to be bound by
it. In Kelly's case the decision of the Court rested upon
the peculiar facts of his case, that he was not using the
street for travel at all, but was walking on the company's
right of way, and was no more walking in the highway
than he would have been in a field or wood through
which the railroad track passed. The highway was not
his road, but a crossing of his road, over which he was
passing because it came in his way, and for no other
reason.

I also think that the question of the contributory neg-
ligence of the plaintiff was for the jury. The knowledge
that he had of railroads was meagre, and he might well
have supposed, considering his age, that the engine would
not start up and cross the street without some signal of
danger or warning of its approach. It is for a jury to
determine his ability and capacity for understanding the
danger, and whether he used such ability and capacity
prudently for one of his years and under all the circum-
stances of the case. It seems he only took two or three
steps between the rails, and there is no evidence that he
intended to keep upon this track after he left the high-
way. He thought to take a short cut, and started for
the platform, and to reach it he would soon have been
obliged to leave the track. Whether it was careless to
take these two or three steps even, with his back to a
standing engine, is something not in the province of a
court to declare as a matter of law. I doubt if it would
have been negligence as a matter of law in an adult, but

in the case of this boy it is a question to be settled by 12 men.

The case of *Bird v. Railroad Co.*, 86 Mich. 79, cited by defendant's counsel, does not apply. In that case the deceased was killed in attempting to climb over the bumpers between the cars. It has never yet, I think, been announced as negligence *per se* to cross the railroad track in a public highway either in the front or rear of a standing engine and tender; and whether it is negligence to turn one's back upon the rear of such engine and tender, and take a few steps away from them, seems to me to depend upon the circumstances of the particular case in which it is done, and, if so, the determination of the question is very appropriately one for a jury.

It is also contended that, if the plaintiff had not been "rattled," he might have escaped. One put suddenly in peril is not required imperatively to do that which, after the peril is ended, it is seen he might have done and escaped. The law makes allowance for the fright and lack of coolness of judgment incident to such peril. It would be absurd to require of this boy, when he saw and heard the car upon him, and was suddenly called upon to decide how he should escape it, to exercise the same coolness and forethought that an uninterested by-stander might manifest. *Strand v. Railway Co.*, 64 Mich. 219. Under our own decisions, this case should have gone to the jury. *Detroit & Milwaukee R. R. Co. v. Van Steinburg*, 17 Mich. 100; *Cooper v. Railway Co.*, 66 Id. 261; *Hassenyer v. Railroad Co.*, 48 Id. 205.

In stating the facts of this case, regard has been had only to the evidence on the part of the plaintiff. If the witnesses for the defense are to be believed, there is no question but the plaintiff was negligent. But the truth of the issue made in the record is for a jury to deter-

mine, and on the plaintiff's showing there is certainly made
a case upon which reasonable men might fairly differ in
passing upon the question of his negligence.

The judgment is reversed, and a new trial granted,
with costs of this Court to plaintiff.

McGRATH and LONG, JJ., concurred with MORSE, J.

GRANT, J. (*dissenting*). Plaintiff was injured by the
tender of a switch-engine in a public street known as
"Park Avenue," in the city of Jackson, where that ave-
nue crosses the defendant's tracks, September 19, 1887.
He claims that the tender and engine · were backed up
against him without any warning by ringing the bell or
blowing the whistle. The allegation in the declaration is
that he was injured "while walking on and along said
public highway, with all due care and caution."

Plaintiff was 14 years and three months old. He was
born and reared in Germany, in a town of about 2,000
inhabitants, through which a railroad passed. He there
lived within half a mile of a railroad crossing, and saw
the cars daily. He went to school till he was about 14
years old, when he came to this country, arriving at
Jackson in July, 1887, where he lived with his uncle.
On the morning of the accident he was on his way to his
daily work, being late. On page 614 is a diagram show-
ing the situation of Park avenue, the railroad tracks, and
the passenger-house.

Main street crosses Park avenue nearly, at right angles,
and to the north of the passenger-house, the north-west
corner of the passenger-house being very near Main street.
The accident occurred on track marked "No. 3." The
engine and tender were standing on this track near the
east side of Park avenue, with the engine facing east.
Plaintiff's place of work was in the north-western part of
the city. His home was south upon Park avenue. The

course he took on this morning was not the most direct from his home to his work, nor the one he usually took. He approached the crossing on the west side of the avenue. As he approached the track, he inclined to the right, and testifies that he was near the center of the avenue when he reached track No. 3; his intention then being to go around the passenger-house on Park avenue, north to Main street. He then changed his mind, and concluded to go to the platform of the passenger-house, across the company's grounds, and reach Main street at the north-west end of the depot. He did not go from that point directly across the tracks to the platform, but turned his back to the tender, and walked in the center of track No. 3 to the west. He heard no bell or whistle. He had taken but two or three steps when the tender approached him. He heard the noise, looked back, and, seeing it very near him, in his confusion jumped first to one side and then to the other, when he was struck. Such, in brief, is his statement of the manner in which the accident occurred. He had lived in Jackson about two months, and had crossed these tracks on Park avenue several times, and had daily crossed the railroad for a long time, either there or elsewhere. Once he had jumped onto a train near the Michigan Southern depot, and was driven off. The case is of sufficient importance to quote some of his testimony.

On direct examination he testified:

"Was going to work in the morning, and cut across the track. First I was going around the depot, then I made my mind up and went towards the platform. That engine was standing on the east side of the crossing. I was going west, and I kept right on going west, and the engine started off. I didn't hear it coming, and as soon as I heard it rattle I looked around, and she was right up to me, about two or three feet from me. I made a jump, but could not get off. She caught me on the heel, and throwed me down, and dragged me quite a ways."

On cross-examination he testified as follows:

" Q. If I understand you, you walked right between those rails?

" A. Yes, sir.

" Q. Then you were not going towards the depot platform, was you?

" A. Yes, sir.

" Q. You could not be going towards the depot platform and keep on between the rails, could you?

" A. Yes, I could.

" Q. The track didn't run up to the platform?

" A. It runs towards the platform up that far, and then I cross over.

" Q. Isn't it a fact that you started to walk down the track to go out to Main street?

" A. I started on that way, but I made up my mind I was going to go to the platform.

" Q. You had not steered directly towards the platform, had you?

" A. No, sir.

" Q. But walked right along the track?

" A. Yes, sir.

" Q. West? And this engine right behind you?

" A. Yes, sir.

*        *        *        *

" Q. You expected when you turned to go right down across the railroad grounds to Main street, did you?

" A. I expected to go to the platform, and on the platform to Main street.

" Q. You were not going to the depot on any business that you had with the road?

" A. No.

" Q. You had stopped walking along the street?

" A. No, sir.

" Q. And was going between the rails?

" A. Yes, sir.

" Q. Then you had stopped crossing the railroad along with the street? You had stopped going that way, the same way the street goes, and had turned to go the same way the tracks were?

" A. That is all; I turned.

" Q. And had gone how far on your road along between the rails when you heard the engine just behind you?

"*A*. About two or three steps.

*       *       *       *

"*Q*. Tell me, if you will, what made you turn your back to an engine, and walk right along between the rails of the same track that the engine was standing on?

"*A*. I don't know.

"*Q*. You knew if the engine did start up you would have to get out of those tracks or be hurt, didn't you?

"*A*. I did not hear it until it got up to me.

."*Q. You knew that an engine standing there that morning was liable to start up at any time, didn't you?*

"*A. Yes, sir.*

*       *       *       *

"*Q*. You turned your back toward the engine, and walked west between the rails?

"*A*. Yes, sir.

"*Q*. But before you turned your back to the engine you saw the engine standing there?

"*A*. Yes, sir.

"*Q*. How long was it before you turned round to go there that you saw it last?

"*A*. I don't know.

"*Q*. Where was you the last time you saw the engine before you heard it come up behind you?

"*A*. I was not in the center of the street. I was about on the side where the sidewalks cross.

"*Q*. Which way was you going?

"*A*. West.

"*Q*. Going west?

"*A*. Yes, sir.

"*Q*. The last time you saw the engine before you heard it close up to you?

"*A*. Yes, sir.

"*Q*. That was after you turned to go west?

"*A*. Yes, sir.

*       *       *       *

"*Q*. How far south of the track the engine stood on was you the last time you saw it before you turned to go towards the platform or to go west?

"*A*. About 10 or 12 feet from the engine. I was southwest from the engine.

"*Q*. And where was you the last time you saw it before you turned?

"*A.* I was on the railroad track then.

"*Q.* On this same track that you got hurt on?

"*A.* I don't know.

\* \* \* \*

"*Q.* Over in Germany, where you lived, did they have a law that people must not walk on the railroad?

"*A.* Yes, sir.

\* \* \* \*

"*Q.* How did you expect, if you were walking between those rails, you were ever going to get onto the depot platform?

"*A.* I walked up so far, and then crossed over.

"*Q. Why didn't you go right towards the depot platform across the tracks, instead of walking between the rails?*

"*A. I don't know.*"

On redirect examination, he testified that he was walking *right straight between the rails*.

The engineer and fireman were upon the engine, one of whom plaintiff saw. The plaintiff's case was unsupported by any other evidence, except that of two witnesses who testified only in regard to a failure to ring the bell or blow the whistle. Three witnesses, two of whom are not in the employ of the defendant, testified that the plaintiff was trying to catch on the engine while it was in motion, and that he fell and was injured in so doing. Three others testified that plaintiff told them that he was injured while attempting to get upon the engine. This is denied by the plaintiff, and, while this would be a proper question for the determination of a jury, still I deem it proper to refer to it as explaining the plaintiff's actions and some of his testimony, and to show the weakness of his case, which the court took from the jury.

1. I think this case is clearly ruled by *Kelly v. Railroad Co.*, 65 Mich. 186. I quote with approval the language of my Brother CHAMPLIN in that case:

"The right of the public in a highway crossing a railroad is simply a right of passage across the railroad. The public, and no individual thereof, have the right to

commit a trespass upon the railroad company's property within the limits of the highway crossing. He cannot interfere with the rails or grounds, or obstruct the tracks, simply because it is in the highway, without committing a trespass. The highway crossing is for the purpose of passage from one side of the railroad to the other, and any other use thereof, whether between the tracks or between the rails, is unwarranted. The right of way and of use, when not used or required for the purpose of passage across the railroad, belongs to the railroad company, and may be used by it in the same manner as if no street crossing was there."

The theory of the declaration in the present case is that plaintiff was walking along the public highway across the defendant's tracks for passage in the usual manner, not that he was passing across the highway along the tracks. Kelly had commenced his trespass before he reached the highway, while Fehnrich commenced his upon the highway. Granting that the plaintiff had the right to use any part of this highway for the purpose of passage across the defendant's tracks, and that he was in the exercise of that right up to the time he reached the center, it does not follow that he had the right to then turn and pass along the company's tracks and across the highway, not for the purpose of going directly into another highway, but of entering upon the company's grounds, where he had no business, and at that time no right.

The moment a traveler ceases to use the highway across a railroad for the legitimate purpose of passage in the usual manner, and walks along the tracks for his own convenience, that moment he becomes a trespasser. And especially must this be true when he so uses them for the purpose of passage over the railroad grounds, where he has no right of passage. In so doing it is too clear for argument that he is not using the highway for the

legitimate purpose of crossing. What difference can it possibly make where the trespass began?

2. Plaintiff by his own gross negligence contributed to the injury. He did not lack in age, experience, capacity, knowledge, or opportunity for observation. The danger was as apparent to him as it would have been to an adult. As stated in *Bird v. Railroad Co.*, 86 Mich. 79, "a train standing upon a highway, with an engine attached, is of itself notice of danger." When one is old enough to see and comprehend the danger, he must be charged with contributory negligence when he deliberately walks into the dangerous place. Plaintiff admits that he saw, knew, and comprehended the danger. The facts are admitted, and no question was left for the determination of the jury. The learned circuit judge said upon the trial:

"Plaintiff saw this engine there, with one man in it. He stepped up to the track, and deliberately stepped between the rails upon which that engine stood, walking west.   *   *   *   I find it impossible for me to state a case to the jury, from his standpoint, upon the question of whether or not he contributed materially to the injury by his own carelessness, as I can find and think of no language appropriate to express a case on which I think the jury would be justified in rendering a verdict in his favor."

It would have been impossible, in my judgment, for 12 honest jurors to have reached any other conclusion, and in such case the question is one of law, for the court, and not of fact, for the jury.

Judgment should be affirmed.

CHAMPLIN, C. J., concurred with GRANT, J.