## COESSENS *v.* RAPID RAILWAY.

STREET RAILWAYS—NEGLIGENCE—DUTY OF MOTORMAN—CHILDREN.
    Plaintiff's intestate, a child 3½ years of age, when first observed,
    about 150 feet away, by the motorman of an approaching sub-
    urban car, was playing in the road with other children.    She
    ran towards and upon the track, and was killed; the motor-
    man being unable, by the most strenuous effort, to stop the
    car in time to avoid the accident.    *Held,* that, as the motor-
    man was under no obligation to act until the child started to
    run towards the track, the evidence was insufficient to es-
    tablish negligence.    MOORE, C. J., dissenting as to the facts.

Error to Wayne; Hosmer, J.    Submitted November 5,
1903.    (Docket No. 91.)    Decided May 17, 1904.

Case by Joseph Coessens, administrator, etc., against
the Rapid Railway, for the alleged negligent killing of his
intestate.    From a judgment for defendant on verdict di-
rected by the court, plaintiff brings error.    Affirmed.

*S. E. Engle,* for appellant.

*Brennan, Donnelly & Van De Mark,* for appellee.

GRANT, J.    I think this case should be affirmed, and
for the reasons stated by the learned circuit judge who
heard the case, as follows:

" I feel constrained, under the evidence which has been
offered in this case, to remove the matter from your con-
sideration.    I think that the testimony of the motorman
and the conductor tends to show that the child was in the
street at the time it was first observed.    Now, there is no
testimony, in my opinion, which tends to negative this
statement.    Some of you are familiar with the premises in
this case, as it is the house just immediately below the
Quirk house, on Gratiot avenue, where we went in the case
immediately preceding this.    All the testimony tends to
show, I think, that the child started to run, and that the

running of the child towards the track was the first intimation to those in charge of the train that there was any intention on the part of the child to approach to a position, with reference to the track, that was unsafe. Therefore I feel constrained to say in this case that there was no obligation on the part of the motorman to slacken the speed of the train until the instant that the child started towards the track. That being so, under the evidence that has been given here, I think the interval of time which passed between the time the child started for the track and the time of the accident was not sufficient to predicate negligence on the part of the defendant, and I therefore feel constrained, gentlemen of the jury, to direct you to render a verdict for the defendant in the case at bar."

The learned and careful circuit judge went with the jury to the place of the accident, and was familiar with the distances and surroundings. No witness for the plaintiff, except Catherine Cooper, even attempts to fix the distance from the car to the place of the accident when it became evident that the girl intended to go in front of the car. The car was running at a lawful rate of speed. I cannot agree with my Brother MOORE that the testimony quoted by him shows that the car was four or five hundred feet away when the child started towards the track in such a manner as to indicate its intention to go upon it. Catherine Cooper is the only witness who testified to seeing the car and the child when she heard one of the women call to the child. She testified:

" I turned to see, and I saw the car coming not very far away, and its distance away, when I first noticed it, would be about around near that next house there on our side of the street, just the other side of the little brick church,—a little the other side of it when I first saw it."

The church, according to the distances marked on the plat which was in evidence, is 252 feet from the place of the accident.

On cross-examination she testified:

" Q. When you first saw the child, it was over on the other side of the road ?

"*A.* Yes, sir.

" *Q.* And started towards the track on a run ?

"*A.* Yes, sir.

" *Q.* And there were a number of children playing around there ?

"*A.* Yes, sir.

" *Q.* And just the moment you saw the child start on the run, you knew that the car was so close that if the child went on its track it would be run over,—you thought so ?

"*A.* Why, yes; I surely must have, or I would not have run.    That was my first thought,—that it would be struck.

" *Q.* Of course, where the car was at that instant you could not swear now, could you ?

"*A.* Well, not exactly; no."

The motorman testified that he saw some children playing in the road in front of Coessens' place when he was about 125 or 150 feet away, that he saw the child start to run across the track, and that, as soon as he saw her start, he shut off the power and put on the air.    He is corroborated by the conductor.    I think the judge was correct in holding that there was no testimony tending to negative their statement.    The motorman was under no obligation to act until he saw or should have seen that the child was in danger.

Judgment affirmed.

CARPENTER, MONTGOMERY, and HOOKER, JJ., concurred with GRANT, J.

MOORE, C. J. (*dissenting*).    This action was brought to recover damages for the death of the 3½-year-old daughter of the plaintiff, who was killed one afternoon in April, 1899, while in the public highway, by a car belonging to the defendant company.    The circuit judge was of the opinion that the time which passed between the time the child started for the track and the time of the accident was not sufficient to predicate negligence on the part of the defendant, and directed a verdict for the defendant. The case is brought here by wr:t of error, and it is insisted

there was sufficient evidence of negligence to make the case one for the jury.

To understand the evidence, it will be necessary to know something of the location where the accident occurred. The highway runs east and west. The car came from the east, and was going west. The child was visiting, with other members of its family, at the residence of its aunt, Mary Coessens, whose house was on the north side of the highway, and stood a little back from it. The kitchen door was near the northwest corner of the house, in the west side thereof. West and nearly south of the kitchen door, a distance of 21 feet, was a well. A path running nearly south from the kitchen door through a gate led to the highway. There was a strip of land parallel with the highway fence, and between it and the traveled portion of the highway was a ditch. Then came the planked portion of the highway, then the dirt road, then the suburban railway track, then a strip of land, and then the south highway fence. East of the Coessens gate 156 feet to the corner of the house was the Quirk house. East of that house, and 96 feet from the southwest corner of it, was a brick church. All of the buildings above mentioned were north of the highway. Directly opposite from the Coessens gate there were planks across the ditch which has already been mentioned. Nearly across the highway from the Coessens gate, but 21 feet west thereof, was a gate leading from the highway to the home of Miss Cooper, which house was 85 feet south of the south line of the highway. East of Miss Cooper's house at a distance of 484 feet was a house belonging to Mr. Ruehle. This was the first house in that direction south of the highway.

It was the claim of plaintiff that the mother of the child left it at the kitchen table getting some candy, while she with some other women stepped out near the well; that the child slipped out of the door, followed the path through the gate, passed across the plank over the ditch, across the planked portion of the highway, across the dirt road, then upon the railway track, and was killed. It is the

claim of the plaintiff that if the motorman had been doing his duty, instead of talking with a person in the vestibule with whom he was visiting, he would have seen the child, would have seen it intended to go upon the track, and would have had time to stop the car and avoid the accident. It is the claim of the defendant that the child was playing at the gate with other children, and that suddenly it left them and ran upon the track, and, before there was time to stop the car, the child was struck. The question involved is whether there was evidence which, if believed, sustained the charge of negligence on the part of defendant.

Mr. Pipper testified he was a passenger on the car, taking it at Mt. Clemens,—

"And this man was in the vestibule with the motorman then, and continued there the whole trip till the time of the accident, but I don't know whether they were talking or not. The car was near my home, and I had risen and motioned the conductor to stop. I did not see the child before it was killed. I did not notice anything till there was a sudden stop, and I turned around and saw the child between the tracks. It was within a block or a block and a half from the accident. I was on my feet so as to be ready to get off, and went towards the back end of the car. They stopped the car, I should judge, in about— The sudden stoppage kind of threw me to one side. I took hold of the seat to stop me from falling. My attention was towards the back end of the car then. I saw the child between the tracks, apparently dead. That same man in the vestibule was there yet. The car was under full speed, and the motor was on at every point, up to that time. I know it."

The mother testified in part as follows:

"Just before the accident she went to the kitchen, and I followed. As I walked to the kitchen door, I saw her at the table helping herself to candy, and I was about to stay there with her, when my sister-in-law, standing at the well, called me, and I turned my back towards the child, and walked towards the well, and we saw two men coming in the distance. We were about trying to make out if they were ours. All at once some one said the car

was coming. I did not pay much attention, and one of the ladies said, 'Clara is on the road;' and I jerked back to look,—turned around to look,—thinking she was in the house. One of my other girls was dressed just like her, and I thought it was she on the street; but I could see it was Clara, and I hollered and screamed for her to stop, that the car was coming; but she did not look back, and then I hollered, 'Catch her! Catch her! Catch her! Catch her!' running at the same time. Mrs. Augena was there on the side of me next to the street. I do not know whether I passed her in getting through the gate first, because my eyes were to the child. They can tell better than I which overtook the other. The child was in the middle of the road when I saw her. I had supposed she was in the house at the table. I think it was about one-half a minute from the time I left her with the candy till the noise of the car was heard. When some one said the car was coming, I was near the well, and I supposed she was in the house. Then I looked to the street, and noticed her.

"As you pass through the gate, there is first a little sidewalk, and then three or four planks laid over a ditch to walk to the road. Next comes the plank road, then the dirt road, then the railway track. When I first saw Clara, she was away out there past the plank road, in the middle of the road, where she was toddling along out there in the middle of the street. She never stopped or looked around. Before all this happened, I heard the others say the car was coming. I ran from where I stood as fast as I could, and got to the end of the boards that lay over the ditch, when I saw she was struck, and her body flew up, and I could not go any farther."

Mrs. Augena testified in part as follows:

"The men were out in the field when this happened. We stood out by the well looking towards them, and saw them coming back. I heard the car coming while we were near the well; I could not see the car then; and I hallooed out, 'A car is coming,' and I turned around, and saw the little child run across the plank which was over the ditch. She was over the ditch when I saw her. There is a plank across the ditch, but she was between the plank and the middle of the street,—between the plank and the dirt road there. She was near that. Mrs. Coessens and I ran at the same time. We started to run. I was ahead

first, but Mrs. Mary Coessens, she ran past me; that is the auntie; she got ahead of me, and the mother ran. The three of us started together. Mrs. Mary Coessens got through the gate first. . The mother got through the gate, too. When I came out past the house, I saw the car. I know where that little church is above there. The car was nearer by them than that church. The car was just above the first telegraph post that way when I got past the house so I could see it. I waved my handkerchief and looked at the car, and looked at the child at the same time, and signaled the car. It took no notice of me, but was going just as fast. After the child was killed, the car stopped quite a ways from there. It did not begin to stop before that. * * * The two Mrs. Coessens and I were up near the well when we heard the car coming, and I turned around and noticed the little child, and she was on the highway running straight towards the track, and we all instantly ran after it. She went right on. She did not stop. She tripped on the track, and tried to get up, and fell down again, and was struck with the car."

Miss Cooper, who lived just across the street from the Coessens house, testified:

" I had been down to the front gate, and one of the ladies had called to the child, and my attention was drawn to it, and I turned to see, and I saw the car coming not very far away, from the direction of Mt. Clemens, and its distance away, when I first noticed it, would be about around near that next house there on our side of the street, just the other side of the little brick church,—a little the other side of it when I first saw it. I could not tell how fast it was coming. They used to go pretty fast, I know, though, and at that time they did. I had noticed the cars much, speeding along, and I used to think they came at a very rapid gait till they struck the city limits. I do not know their rate per hour. I saw the car first up somewhere beyond the little church, and several children were outside the gate, and when I noticed this child it had started to run across the road. When I first saw it, it was going across the road. You could tell it intended to run across, and had no thought of the car coming. It seemed bound to go right across. I cannot tell how long the little child was in sight so it could be seen by the motorman, because, as soon as I glanced to see the car coming, I started to run. I thought I did not want to see it killed.

I was frightened myself, and went right away. I only gave one thought, one glance at the car, and then ran. All I saw was the child and the car coming, and ran. At that time I think the car was in front of the house next to us, or near the church, coming, as near as can be. I looked back once, and the little child was under the car. It ran directly from their gate, you know,—Coessens' gate; must have been struck, of course, right straight across from Coessens' gate, and that is a number of feet east of our gate. I think the place where they picked it up was just about in front of our gate."

. It is suggested the effect of the direct examination of Miss Cooper is nullified by her cross-examination, which closed as follows: "*Q.* Of course, where the car was at that instant you could not swear now, could you? *A.* Well, not exactly; no." She was then asked by counsel for plaintiff, "But what you have said in that respect you believe to be correct?" and replied "Yes; as near as anybody could say." My impression of the effect of the cross-examination is to show great caution upon the part of a witness who is honestly trying to tell what occurred, and not do away with the effect of her testimony.

The testimony I have quoted tends to show the car was four or five hundred feet away when the child, after it passed into the highway, started towards the track in such a manner as to indicate its intention to go upon it. As already stated, the testimony of the witnesses for the defendant tended to show an entirely different state of facts. Under the testimony, I think the question of negligence should have been submitted to the jury. *Detroit, etc., R. Co.* v. *Van Steinburg*, 17 Mich. 99, and the many cases there cited; *Hassenyer* v. *Railroad Co.*, 48 Mich. 205 (12 N. W. 155, 42 Am. Rep. 470); *Nelson* v. *Mining Co.*, 65 Mich. 288 (32 N. W. 438); *Lehman* v. *Steel Works*, 114 Mich. 260 (72 N. W. 183), and the cases therein cited.

I think the judgment should be reversed, and a new trial ordered.