GRADYSZEWSKI *v.* DETROIT UNITED RAILWAY.

1. STREET RAILWAYS—OPERATION OF CARS—NEGLIGENCE.
    Evidence that plaintiff, a boy of seven years and upwards, crossed defendant's car tracks in front of a car approaching about 100 feet away, that his cap fell off in the middle of the tracks, and as he stopped to pick it up, the car struck and injured him, that as he stooped to recover his cap it was 12 or 14 feet away, was insufficient to show negligence in the operation of the car or excessive speed.

2. SAME—PERSONAL INJURIES.
    A motorman is not bound to anticipate that a pedestrian crossing the track will place himself in a position of danger, but may assume that if he is able to cross safely he will do so, if not, that he will remain in safety: it is impracticable to require that the car should be checked whenever persons approach the track; only when the motorman becomes aware of peril is he required to adopt precautions to avert injury.[1]

Error to Wayne; Murfin, J. Submitted October 18, 1912. (Docket No. 69.) Decided November 8, 1912.

[1] As to right of motorman to assume that person on track will get out of way, see note in 21 L. R. A. (N. S.) 880.

Right of motorman to assume that no one will attempt to cross track so close in front of car as to render a collision probable, see note in 5 L. R. A. (N. S.) 1059.

Case by John Gradyszewski, Jr., by his next friend, against the Detroit United Railway for personal injuries. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Affirmed.

*August Cyrowski* (*Felix A. Doetsch*, of counsel), for appellant.

*Corliss, Leete & Joslyn* and *Frederic T. Harward*, for appellee.

BROOKE, J. Plaintiff, a boy seven years and five months of age at the time of his injury, was proceeding southerly along the east side of St. Aubin avenue in the city of Detroit. He desired to cross Forest avenue, upon which defendant operates a double-track electric line. The paved portion of Forest at this point is 40 feet wide. The distance from the north curb on Forest avenue to north rail of defendant's tracks is 12.65 feet. As plaintiff left the curb and started to cross the street, he saw one of defendant's cars approaching from the east. The car was then a little east of the alley, which is 100 feet east of the east line of St. Aubin avenue, where the plaintiff was. When plaintiff reached the middle of the track upon which the car was approaching, his cap fell off. He attempted to recover it, and while so doing was caught and run over by the car, sustaining injuries for which recovery is sought.

Plaintiff testified that he had been going to school about a year, that he was familiar with this crossing, and knew that cars ran east and west on Forest avenue. On cross-examination he further testified:

"*Q*. You saw the car coming down, then, on the north track?

"*A*. Yes, sir. It was going kind of fast. I know it was going kind of fast, because I seen it coming. I didn't see any cars coming in the other direction. That was the only car I saw.

"*Q*. You saw that coming. It was about opposite the alley?

"*A.* Yes, sir.

"*Q.* You were then on the curb on the corner of Forest and St. Aubin?

"*A.* Yes, sir.

"*Q.* How far was the curb from the track that the car was on?

"*A.* Oh, about six or seven feet.

"*Q.* And this car was coming—was it coming very fast?

"*A.* Yes; it was going pretty fast. I didn't, it didn't go very fast, but it was going kind of fast.

"*Q.* You walked along in front over the track?

"*A.* No; I didn't walk over the track.

"*Q.* What did you do?

"*A.* I walked up and I happened to stoop down and pick up my hat.

"*The Court:* I understood him to say that he walked onto the track, not over it.

"*Q.* You walked onto the track?

"*A.* Yes; onto the track.

"*Q.* You didn't go right onto the track, did you?

"*A.* Yes, sir; I went onto the track that the car was coming on.

"*Q.* Did you go right to the middle of the track?

"*A.* Yes; in the middle. I don't know how my hat happened to fall off. I don't remember if it was windy or not. My cap fell off.

"*Q.* Why didn't you go and leave your hat there in the street? You knew the car was coming fast, didn't you?

"*A.* Yes, sir; I did. I thought I would get past.

"*Q.* How far was the car from you when your hat fell off?

"*A.* It was about a little—half ways of that house.

"*Q.* You know how much 10 or 15 feet is, don't you?

"*A.* Yes, sir.

"*Q.* Speaking of feet, about how far was the car from you when your cap fell off?

"*A.* Oh, it was about 12 feet.

"*Q.* It hadn't slowed up any, had it?

"*A.* No; it didn't slow up.

"*Q.* When the car was about 12 feet from you, you went to get your hat which was in the middle of the track?

"*A.* Yes, sir.

"*Q.* You had been in the middle of the track before,

hadn't you, or your hat wouldn't have been there, would it?

"*A.* No; it wouldn't have been there.

"*Q.* Your hat dropped off, and then you walked back.

"*A.* No; I didn't go back at the same time. I picked it up. It fell off frontways.

"*Q.* And the car was about 12 feet away from you when you picked the cap up?

"*A.* Yes; may be about 14, I don't know.

"*Q.* Twelve or 14?

"*A.* Yes, sir.

"*Q.* Didn't you know that the car that near—you knew if you got in front of a car it would hurt you, didn't you?

"*A.* Yes; but I knew I would get past it.

"*Q.* You didn't get past it, did you?

"*A.* No; it must have started faster.

"*Q.* Did you notice it start up faster?

"*A.* No; I didn't notice it.

"*Q.* When you stooped over, was your back to the car or were you facing the car?

"*A.* I was in the middle of the track.

"*Q.* Your back to the car?

"*A.* Yes; I was this way.

"*Q.* You were not looking at the car when you picked your cap up?

"*A.* Yes; I was looking at it, picking up my hat.

"*Q.* Were you looking at your hat or at the car?

"*A.* At the car. Then I looked at my hat and picked it up.

"*Q.* Which did you look at first—the car or your hat?

"*A.* The car.

"*Q.* Suppose the car was coming about here, where the jury is—you turned around this way?

"*A.* Yes, sir.

"*Q.* You were back to the car?

"*A.* No; towards the car, I looked.

"*Q.* Were you facing the car when you picked it up?

"*A.* Yes; I faced it—not all. I faced, as though the car was coming from that way, and I faced. I tried to pick my hat up.

"*Q.* You stooped over that way in front of the car?

"*A.* No; I had my face towards the car, and I was then, I was standing this way, looking at the car that way, and trying to pick up my hat.

"*Q.* Had you your hat in your hand when the car struck you ?

"*A.* No; I don't remember that, if I had it in my hand ?

"*Q.* How did you know where your hat was; were you groping around to find your hat ?

"*A.* Yes, sir; I was looking.

"*Q.* You couldn't look at your hat and the car, the same time, could you, John ?

"*A.* No.

"*Q.* How did you arrange that ?

"*A.* I seen my hat fall off.

"*Q.* You knew your hat was falling off, you felt that ?

"*A.* Yes, sir.

"*Q.* You say you didn't look at the hat while you picked it up, you looked at the car ? Is that right ?

"*A.* Why yes; I looked at the car.

"*Q.* But you didn't look at the hat ?

"*A.* Yes; I looked at the hat too.

"*Q.* The hat was on the pavement, and the car was along about 12 feet from you ?

"*A.* I looked at the car first, then at the hat.

"*Q.* You looked at the car first, then at the hat ?

"*A.* Yes; then at the hat.

"*Q.* You were not looking at the car when you were struck ?

"*A.* Then, no; because I couldn't.

"*Q.* You say, when you first saw the car, it was right opposite the alley ?

"*A.* Yes, sir.

"*Q.* You walked along, and the car kept right along, coming towards you ?

"*A.* Yes, sir.

"*Q.* You were going across the track ?

"*A.* Yes, sir.

"*Q.* You intended to get across the track, didn't you ?

"*A.* Yes, sir.

"*Q.* Isn't that right ? When you got in the middle of the track, your hat fell off ?

"*A.* Yes, sir.

"*Q.* And you didn't go on; but then the car was 12 feet from you ?

"*A.* Yes, sir.

"*Q.* Coming along pretty fast ?

"*A.* Yes, sir.

"*Q.* You saw the car?

"*A.* Yes, sir.

"*Q.* Looked at the car coming along pretty fast, 12 feet from you, and you stooped over to pick up your hat?

"*A.* Yes, sir.

"*Q.* That is all you remember?

"*A.* Yes, sir; that is all. I don't remember how far the car went after it hit me, because I never seen anything."

On redirect:

"*Q.* When you say 12 or 14 feet, John, how far do you think it is? Can you tell me here in this room on the floor?

"*A.* It is further than that there side.

"*Q.* Here?

"*A.* Yes; it is further than that.

"*Q.* How far do you think 12 feet is—about here?

"*A.* Yes; about that far.

"*Q.* That is the distance you saw the car when your hat fell off?

"*A.* Yes, sir."

On recross:

"*Q.* How much is a foot? Put your hands up for a foot.

"*A.* About that much.

"*Q.* You think 12 of those would take you down there where he is?

"*A.* I don't know the difference. I never measured.

"*Q.* What?

"*A.* I never bothered myself measuring.

"*Q.* You said 10 or 12 feet.

"*A.* I don't know how much it is.

"*Mr. Doetsch:* He said 12 or 14.

"*Q.* If the car was 12 or 14 feet, and was down where Mr. Cyrowski stood, you were pretty slow in picking up your hat, weren't you?

"*A.* No; I wasn't slow. I took it as fast as I could.

"*Q.* And yet the car came down on you in that distance?

"*A.* Yes, sir; struck me.

"*Q.* You were looking at the car all the time?

"*A.* No; not looking. I looked at the car. Then I went and took a chance at my hat.

"*Q.* That is how you got hurt?

"*A.* Yes, sir."

Upon this testimony the court directed a verdict for defendant, holding that plaintiff had failed to show any negligence on the part of the defendant company. A motion for a new trial was thereafter denied, and error was assigned upon such denial.

The only error argued in the brief for appellant is that the court erred in directing a verdict.

We are of opinion that the direction was warranted by the testimony. There is nothing in the record to indicate that defendant's car was operated at an excessive rate of speed or in any manner negligently.

It is obviously impossible to demand that motormen when running at proper speed should check their cars whenever they see a pedestrian in front approach the track. If the distance is sufficient for a crossing to be made safely, the motorman has the right to assume that the pedestrian will so cross, if the distance is insufficient he has a right to assume that the pedestrian will maintain a position of safety at the side of the track. The motorman is not bound to anticipate that the pedestrian will place himself in a place of danger; indeed, he has the right to assume the contrary. When, however, he becomes advised, or in the exercise of due care should become advised, of the peril of the pedestrian, it is his duty to use all means within his control to avert injury. When plaintiff's hat fell off and he attempted to recover it, the car was so close to plaintiff that to stop it before collision was clearly impossible. This conclusion is based upon the assumption of the truth of plaintiff's testimony as to the rate of speed. Had plaintiff's hat not fallen off and had he not stopped to recover it, he could have crossed the track in safety. The motorman could not anticipate that this would occur, nor was he bound to operate his car so as to be prepared for a contingency so remote. The facts in this case bring it within the principle of several of our own decisions.

*Fritz* v. *Railway Co.*, 105 Mich. 50 (62 N. W. 1007); *Merritt* v. *Foote*, 128 Mich. 367 (87 N. W. 262); *Coessens* v. *Railway*, 136 Mich. 481 (99 N. W. 751); *Rollo* v. *Railway Co.*, 152 Mich. 77 (115 N. W. 727); *Stenzhorn* v. *Railway Co.*, 159 Mich. 82 (123 N. W. 621). No negligence on the part of defendant having been shown, the question of plaintiff's contributory negligence becomes unimportant.

The judgment is affirmed.

MOORE, C. J., and STEERE, McALVAY, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.