## WEITZEL *v.* DETROIT UNITED RAILWAY.

1. APPEAL AND ERROR—WEIGHT OF TESTIMONY—DIRECTED VERDICT —REVIEW.

On error from a verdict directed in favor of defendant, the testimony must be considered in the light most favorable to plaintiff's claim.

2. STREET RAILROADS — NEGLIGENCE — INFANTS — EVIDENCE — CONTRIBUTORY NEGLIGENCE.

Where plaintiff, a minor of above nine years of age, started to cross a street and reached the center of the street between the double tracks of defendant railroad

company as a car approached from the west, when he observed two automobiles approaching from the opposite direction at about the same distance from him as the street car, at a high rate of speed, and the evidence showed that his father had instructed him shortly before the accident in the proper precautions to take in crossing the street, but that in the perilous position in which he found himself he adopted the wrong course and attempted to cross in front of the car, he was not chargeable with such contributory negligence as to bar his recovery as matter of law.[1]

3. SAME—EXPOSURE TO PERIL—FRIGHT.

An infant is not chargeable with such a degree of care that when suddenly exposed to peril he is required to exercise the same coolness or forethought that an older or experienced person would manifest; an allowance may be made for the state of mind or fright to which the injured child was exposed.

4. SAME—DISCOVERED NEGLIGENCE.

*Held*, also, that whether the motorman should have been able to see the plaintiff was in a perilous position in time to have checked the car and avoided the accident raised an issue of fact which should have been submitted to the jury.

BROOKE, C. J., and OSTRANDER and STEERE, JJ., dissenting.

ON REHEARING.

5. SAME — SUBSEQUENT NEGLIGENCE — PLEADING — APPEAL AND ERROR.

Though subsequent or discovered negligence ought to be averred in plaintiff's pleadings, if the objection was not presented to the lower court, it will not be considered fatal on error, and an amendment being permissible upon a new trial, the direction of a verdict in defendant's favor will not be affirmed for such reason.

Error to Wayne; Tucker, J., presiding. Submitted November 17, 1914. (Docket No. 87.) Decided June 7, 1915. Rehearing denied July 23, 1915.

[1] As to what acts of child in attempting to cross street car tracks are negligent as matter of law, see note in 11 L. R. A. (N. S.) 166.

Case by Andrew J. Weitzel, as administrator of the estate of Stanley G. Weitzel, deceased, against the Detroit United Railway for the unlawful killing of decedent. Judgment for defendant upon a directed verdict. Plaintiff brings error. Reversed.

*McHugh, Gallagher, O'Neil & McGann,* for appellant.

*Corliss, Leete & Moody* (*Frederic T. Harward,* of counsel), for appellee.

KUHN, J. The plaintiff is the father and administrator of the estate of Stanley G. Weitzel, whose death was caused by injuries received when he was struck by one of the defendant's cars on June 13, 1912. The accident occurred on Gratiot avenue, in the city of Detroit, at the intersection of Belvidere avenue. Gratiot avenue runs in a northeasterly and southwesterly direction, but is spoken of in the record and briefs and in this opinion as running in a general easterly and westerly direction. It is intersected by Belvidere avenue on the north side 20 or 30 feet east of the intersection of the same avenue on the south side, and the street next easterly from Belvidere, crossing Gratiot avenue, is McClellan avenue. The deceased, who was 9 years and 3 months of age, lived on Belvidere avenue, north of Gratiot, and attended school on Belvidere avenue south of Gratiot. He had been warned and instructed by his father how to proceed safely across the street, and taught to stand and look both ways before proceeding to cross. This had been done two weeks before the accident.

On the day of the accident he walked homeward from school about noon with two schoolmates, Josephine Abel, 10 years old, and Olive McCabe, 12 years old. The girls left him before they reached Gratiot, and crossed a vacant lot to a bakery on the south side of Gratiot, about 90 feet west of the inter-

section of Belvidere. When deceased reached home, his mother sent him to the same bakery on an errand, and on his way he stopped at a grocery on the north side of Gratiot, looking directly into Belvidere on the south. By this time the two girls had completed their errand in the bakery and were waiting outside the shop for Josephine's sister. They saw deceased, with another boy, standing on the curb in front of the grocery across the street. A west-bound car passed on Gratiot avenue, and the deceased started to cross. The car was followed by two stripped automobiles on a testing run, but deceased reached the devil's strip before they passed. He was struck, however, by a car going in the opposite direction, and the injury resulted in his death an hour later.

The testimony mainly relied upon by the plaintiff in support of his claim is that of the two little girls, Josephine Abel and Olive McCabe. The latter testified that she saw deceased on the north curb after the west-bound car had passed. Then she noticed the car coming from the west, and before it reached the bakery she observed that there was no motorman in sight, and remarked to Josephine, "Here comes a car without a motorman." Josephine replied, "Oh, yes, there he is; I can see his cap." Then Olive saw the automobiles coming down the north track from the east, and saw deceased standing on the devil's strip. The car was now opposite the bakery, 90 feet distant from the grocery. The car and the automobiles closed in together and seemed to put deceased in a pocket. The car passed, leaving deceased lying between the tracks, and came to a stop beyond Belvidere. Josephine Abel testified to having seen nothing of the motorman but his cap, and to not having heard a gong. She said the automobiles were not exactly in the groove of the north track, but were running a little to the north of the track, presumably with two wheels outside the most northerly rail. She further stated:

"By this time the car had come a little past the greenhouse. It was right by the greenhouse when I first saw it. The next thing I noticed Stanley was out between the car and the testers. The testers were a little below Stanley. The car was west of Stanley, and the testers were east of him. He was in between the two. I hollered, 'Oh, Mister, Mister, stop!' I hollered that, because I thought something was going to happen. The car did not stop. From the time that I noticed the car without any motorman, except the motorman's cap, the car did not sound any gong at all. It went about to McClellan before stopping. While the car was passing where I had seen Stanley, I heard a bang. After I heard the bang, I saw Stanley lying on the ground. Some one picked him up. He was taken to the drug store. I did not stay there very long, as Miss Teagan, one of our teachers, came along and sent us home. I could not say just where the east-bound car was when I saw Stanley between the tracks."

The court refused to grant defendant's motion for a directed verdict at the close of the plaintiff's proofs, and the defendant thereupon offered testimony of passengers on the car that plaintiff's decedent ran into the side of the car with his head turned away and that they heard the bump of the collision. The learned trial judge directed a verdict for the defendant at the close of all the proofs, for the reason that under the facts of this case it must be held that plaintiff's decedent was guilty of contributory negligence, and further held that the defendant could not be held to be guilty of gross or discovered negligence. A verdict having been directed against the plaintiff, the testimony must be considered in the light most favorable to plaintiff's claim.

We think it may be conceded (and plaintiff's counsel made no claim to the contrary at the argument) that the deceased, because of the instruction he had received, his experience in crossing the street car tracks, and being a bright and intelligent boy of his years, was

capable of being held guilty of contributory negligence. See *Holian* v. *Railway Co.*, 194 Mass. 74 (80 N. E. 1, 11 L. R. A. [N. S.] 166), and note. However, can it be said that plaintiff's decedent was guilty of contributory negligence under the facts shown in the instant case most favorable to plaintiff's claim? He was standing on the curbstone on the north side of Gratiot avenue until the west-bound car had passed, and then started to walk across; the east-bound car being then a block away. He reached the devil's strip when the car was at Metloff's 90 feet west of him, and was facing the street car, with the automobiles at the same time approaching him on the northerly track from the other direction at about the same distance as the car was from him, and he thus found himself in a pocket. Standing in this narrow strip, with the car and automobiles rapidly approaching him from opposite directions, it must be said that he was in a position of imminent peril. There were three courses of conduct open to him—to stay where he was, cross in front of the oncoming car, or retreat in front of the oncoming automobiles. Any one of them was dangerous to him, and it was necessary to form his judgment quickly.

It may be said that he chose the wrong course, but we are of the opinion that it cannot be said as a matter of law that an error of judgment under such circumstances is negligence. As was said by this court in *Fehnrich* v. *Railroad Co.*, 87 Mich. 606, at page 612 (49 N. W. 890, at page 891) :

"One put suddenly in peril is not required imperatively to do that which, after the peril is ended, it is seen he might have done and escaped. The law makes allowance for the fright and lack of coolness of judgment incident to such peril. It would be absurd to require of this boy, when he saw and heard the car upon him, and was suddenly called upon to decide how he should escape it, to exercise the same coolness

and forethought that an uninterested bystander might manifest."

See, also, *Mercer* v. *Railroad Co.*, 151 Mich. 566 (115 N. W. 733).

If defendant's witnesses are to be believed, the deceased was clearly guilty of contributory negligence; but the question is one which should have been submitted to the jury.

We are also of the opinion that the question of the defendant's gross or subsequent negligence should have been submitted to the jury. The motorman testified that the car was going 8 or 10 miles an hour, and that he could bring his car to a stop within 45 or 50 feet. While it may be said that a person merely standing in the devil's strip is not in such a position of peril as to oblige the motorman of a car to bring it under control, nevertheless the position of plaintiff's decedent in the devil's strip, the automobiles coming toward him from one direction, and the car coming from the other, taken together, did create a perilous situation, and if the motorman had seen him and the situation he was in, as he should have if a proper lookout had been kept, it was his duty to immediately get his car under control, and, if possible, avoid the accident which resulted. His failure to do so under these circumstances would warrant the jury in finding the defendant guilty of subsequent negligence, even if it should be found that the plaintiff's decedent was guilty of contributory negligence. *Battishill* v. *Humphreys*, 64 Mich. 514 (38 N. W. 581); *Cooper* v. *Railway Co.*, 66 Mich. 261 (33 N. W. 306, 11 Am. St. Rep. 482); *Schindler* v. *Railway Co.*, 87 Mich. 400, 405 (49 N. W. 670); *Richter* v. *Harper*, 95 Mich. 221, 225 (54 N. W. 768); *Montgomery* v. *Railway Co.*, 103 Mich. 46, 52 (61 N. W. 543, 29 L. R. A. 287); *Daniels* v. *Traction Co.*, 143 Mich. 493, 505 (107 N. W. 94); *Bladecka* v. *Traction Co.,* 155

Mich. 253 (118 N. W. 963); *Clark* v. *Traction Co.,* 167 Mich. 694, 697 (133 N. W. 927); *Fike* v. *Railroad Co.,* 174 Mich. 167, 205 (140 N. W. 592); *King* v. *Railway Co.,* 176 Mich. 645 (143 N. W. 36).

The judgment is reversed, and a new trial granted.

MCALVAY, STONE, BIRD, and MOORE, JJ., concurred with KUHN, J.

BROOKE, C. J. (*dissenting*). I find myself unable to agree with the conclusions reached by my Brother KUHN in this case. Plaintiff's decedent was at the time of the accident 9 years and 3 months old. He was a boy of unusual intelligence, and had been in the habit of crossing Gratiot avenue at or near the point where he was injured for some time, and had been specially instructed by his father as to a safe method of crossing. He should be held guilty of contributory negligence as a matter of law, under the following decisions:

*Ecliff* v. *Railway Co.,* 64 Mich. 196 (31 N. W. 180); in which case the boy killed was 12 years of age.

*Trudell* v. *Railway Co.,* 126 Mich. 73 (85 N. W. 250, 53 L. R. A. 271), in which case the boy was 7 years and 4 months old. We there said:

"We think the court was in error in submitting either the proposition of defendant's negligence or the negligence of the boy to the jury. The verdict, under the circumstances, should have been directed in favor of the defendant. The testimony conclusively shows that this boy, while only a little over 7 years of age, knew and appreciated the danger there was in being on this track."

*Perego* v. *Railway Co.,* 158 Mich. 225 (122 N. W. 535). In this case the boy was 8½ years old. Recovery was denied upon the ground that the contributory negligence of the boy was established as a matter of law.

*Knickerbocker* v. *Railway Co.*, 167 Mich. 596 (133 N. W. 504). In this case the boy who lost his life was 10 years of age, and in denying recovery this court said:

"His intelligence and his ability to appreciate the danger which actually threatened, and to avoid it if seasonably discovered, cannot be questioned. He did not discover the actual danger."

*Mollica* v. *Railway Co.*, 170 Mich. 96 (135 N. W. 927). In this case the child was 9 years and 6 months old. After describing the situation and circumstances surrounding the accident, the court there said:

"A glance in that direction, occupying but an instant, as he approached the danger zone where he stopped, would have informed him and saved his life; if seasonably discovered, he would have apprehended and avoided this danger as intelligently and quickly as any adult. He was old enough to know, and in the very nature of things did know, that where he stood was a dangerous place."

See, also, *Gradyszewski* v. *Railway*, 173 Mich. 13 (138 N. W. 225).

My Brother KUHN, without mentioning the foregoing cases, suggests that the contributory negligence of plaintiff's decedent should be held to be a question of fact for the determination of the jury, because just prior to the moment of injury the boy found himself in a position of peril and should not be held to so strict an obligation to care for his own safety as would otherwise be imposed upon him. This conclusion presupposes the fact that when he neared the track upon which the east-bound car was proceeding he was in a position of peril by reason of the automobiles approaching from the east. While one of the two little girls, witnesses for the plaintiff, described him at that moment as being in a pocket, an examination of their testimony discloses the fact that the automobiles were not directly upon the west-bound

track, but were straddling the northerly rail thereof. It is, I think, entirely obvious that a position upon the "devil's strip" itself is not one of imminent peril, when, as in the case at bar, no street car is approaching from the other direction. Indeed, a fullgrown man may stand in safety, by the exercise of care, between two cars as they pass each other. That is not the case here, however. There was an ample space between the approaching car, with which the plaintiff's decedent came in contact, and the oncoming automobiles, which, as before stated, were not running directly upon the west-bound track.

The case of *Fehnrich* v. *Railroad Co.*, 87 Mich. 606 (49 N. W. 890), cited by my Brother Kuhn, is, in my opinion, entirely inapplicable. In the case at bar, if plaintiff's decedent found himself in a perilous situation, he was there solely as the result of his own negligence. No negligent act on the part of the defendant had helped to create the situation. In the *Fehnrich Case*, I find that the plaintiff was injured upon a highway by an engine which was backed down upon him without either sounding a warning bell or whistle. The *Fehnrich Case* is predicated upon the decision of *Strand* v. *Railway Co.*, 64 Mich. 216 (31 N. W. 184), where the plaintiff was injured in stepping off a railway train which had been started without allowing the passengers sufficient time to alight. Neither case has any application to the facts here under consideration.

With reference to the question of discovered negligence, or the doctrine of last chance, it would, perhaps, be sufficient to say that the declaration is not framed upon that theory. If it had been, I am of opinion that there is no room for the application of the doctrine in this case. Had the accident happened exactly as detailed by the plaintiff's witnesses, and the overwhelming weight of the evidence shows that it

did not so occur, and had the defendant's motorman seen the boy standing upon the "devil's strip," I am of opinion that the circuit judge was entirely correct in holding that this fact would impose upon him no duty to slacken the speed of his car. He would have a right to assume that plaintiff's decedent would maintain, if unable to cross in front of the oncoming car, a position of safety where he stood, or, if he deemed that too perilous, to step back a foot or two farther to the north. The motorman knew, as the boy must have known, that the automobiles could and would swerve to the north and leave ample room for the boy to stand in the position he had assumed.

Under the circumstances disclosed by this case, I am satisfied that a correct solution was reached by the learned trial judge, and that the verdict was properly directed.

The judgment should be affirmed.

OSTRANDER and STEERE, JJ., concurred with BROOKE, C. J.

## ON REHEARING.

PER CURIAM. In the opinion of Chief Justice BROOKE, it was said with reference to the question of discovered negligence that the declaration was not framed upon that theory. The question of the sufficiency of the declaration apparently was not raised in the court below, and the question of subsequent or discovered negligence, as applicable to this case, is discussed in briefs of counsel. That the learned circuit judge considered the question as before him is very apparent from his charge to the jury, in which he said:

"There is another phase of law which has been suggested by the plaintiff in the case, what we call 'subsequent negligence,' that is, that duty that devolved upon a motorman in charge of a car, where he has

186 Mich.—2.

reasonable ground to believe that a party observed in front of his car at a distance far enough so he could have stopped his car, was in a dangerous situation, and notwithstanding the apparent unconcern or negligent attitude of the person."

Counsel for the defendant and appellee, in the motion for rehearing, insist that gross negligence must be pleaded, and rely upon the case of *Denman* v. *Johnston,* 85 Mich. 387 (48 N. W. 565). We think this is true, and it would have been a proper question if it had been urged in the court below, where opportunity might have been given to amend the declaration. As the case is being sent back for a new trial, in the event the case should be again tried upon that theory and the question raised, an amendment to the declaration might be then allowed.

The other questions discussed in the motion for a rehearing were fully considered by the court in the previous opinions.