MICHAEL J. KELLY v. THE MICHIGAN CENTRAL RAIL-ROAD COMPANY.

*Negligence—Injury to trespasser upon railroad track—Highway crossing—" Staking cars."*

1. Plaintiff, while walking *between* two of defendant's tracks in its switching yard, was struck by a stake running from an engine on one track to cars on the opposite track, and used in moving the same, and seriously injured. At the *time* of the accident he was crossing a *public* street which crossed the tracks, with the intention of proceeding on defendant's right of way to the shop adjoining same, where he was employed. It was not yet daylight. He saw the engine and moving cars, but did not see the stake connecting same. The employes in the shop were in the habit of reaching it by this route, but not with defendant's consent, it having warned the public not to walk on its tracks, and had stationed men at street crossings to prevent such travel.

   *Held*, that plaintiff was a trespasser, and that the court erred in instructing the jury that upon *this* state of facts, in the absence of contributory negligence, plaintiff was entitled to recover.

2. Negligence in law is a relative term, and implies the non-observance of, or omission to perform, a duty prescribed by law, or it arises from the situation of the parties and the circumstances surrounding the transaction.

3. There is no provision of law forbidding the "staking of cars" across highways in a railroad company's yard or elsewhere.

4. A railroad company is the owner of its right of way, and has the

right of passage and use, in the ordinary manner, of its tracks at. highway crossings.    Likewise do the public have a right of way and of passage across such tracks to be used and enjoyed in the ordinary manner.    These rights are in a sense reciprocal,. and must be exercised with a due regard to the rights of each other.

5. The right of the public in a highway crossing a railroad is simply a *right of passage* across the railroad, and no individual has the· right to commit a trespass upon the railroad company's property within the limits of the highway crossing, which is for the pur-' pose of passage from one side of the railroad to the other, and any other use thereof, whether between the tracks or rails, is unwarranted.    The right of way and of use, when not used or required for *such* passage, belongs to the railroad company, and may be used by it in the same manner as if no street crossing· was there.

Error to superior court of Detroit.    (Chipman, J.)    Argued January 13, 1887.    Decided February 15, 1887.

Case.    Defendant brings error.    Reversed.    The facts are· stated in the opinion.

*Henry Russel* (*Ashley Pond*, of counsel), for appellant:

Had the accident happened on the defendant's premises· outside the limits of a street crossing, it is conceded there could be no recovery: *Mich. C. R. R. Co. v. Campau*, 35 Mich. 468; *Bresnahan v. Mich. C. R. R. Co.*, 49 Id. 410; *Pzolla v. Mich. C. R. R. Co.*, 54 Id. 273.

The jury have simply found he was *in* the street, but have not found, and could not find, that he ·was a traveler *upon* the street: *Grethen v. C., M. & St. P. Ry. Co.*, 19 Am. & Eng. R. R. Cas. 342; S. C. 22 Fed. Rep. 609.

*E. T. Wood* (*Levi T. Griffin*, of counsel), for plaintiff:

The generality of the adoption by railway companies of an unreasonable or dangerous custom, or one productive of injury, cannot in a given case, excuse or justify the act resulting from it:    *Judd v. Fargo*, 107 Mass. 264; *Lewis v. Smith*, Id. 334; *Bailey v. New Haven & N. Co.*, Id. 496 ;. *Hinckley v. Barnstable*, 109 Id. 126.

See also, in support of rulings of trial judge in excluding proof of custom of defendant and other railroad companies in staking cars, *Miller v. Pendleton*, 8 Gray, 547 ; *Littleton v.*

*Richardson*, 32 N. H. 59; *Sewall's Falls Bridge v. Fisk*, 23
Id. 171; *Crocker v. Schureman*, 7 Mo. App. 358; *Temperance
Hall Ass'n v. Giles*, 33 N. J. Law, 260; *Hamilton v. Des
Moines V. R. R. Co.*, 36 Iowa, 31; *Tripp v. Lyman*, 37 Me.
250; *Hill v. Portland, etc., R. R. Co.*, 55 Id. 438.

CHAMPLIN, J.   On the twenty-seventh day of December,
1881, plaintiff was in the employ of the Detroit Car Wheel
Company, whose shops are situated near to the western limits
of Detroit, and adjoining the railroad tracks of defendant.
There are not less than six railroad tracks between the Car
Wheel Company's shops and the depot of the defendant com-
pany in the city, and at some points a great many more.
There are manufacturing institutions located along defend-
ant's right of way on either side, and spur tracks leading
thereto, all making up the necessary terminal, transfer, and
local yard of the defendant in the city of Detroit.

Vinewood avenue is a public street, laid out and opened
across the defendant's right of way, and runs nearly north
and south, and is several rods east of the Detroit Car Wheel
Company's shops.   There are also other streets crossing de-
fendant's right of way.   Laborers who work at the different
manufactories have been in the habit of entering upon de-
fendant's right of way, and traveling thereon to and from
their places of work, but not with defendant's consent.
Defendant caused to be erected signs at each street crossing,
with a notice containing these words:

"No thoroughfare !   The public are warned against walk-
ing on these tracks !"

Plaintiff testified:

"I knew that an effort had been made to stop people from
walking on the tracks.   I was told that at one time they put
people on crossings to stop people from walking on the tracks.
I don't know that they put up these signs after that, but I
have seen them since.   Up to that time I had not seen them.

"Q. You knew that these men were put upon these cross-
ings to keep people from walking up and down those tracks?

That was what they were there for, as you have heard, was it not ?

"*A.* Yes, sir; they had to warn people.

"*Q.* What you were told was this: that they put men there to stop people from walking up and down and along the tracks, was it not ?

"*A.* Well, I was told that they were there to stop people from walking on the tracks, and to see that people would cross there safely; and, if they could not stop them, they let them go,—let them take their chance."  .

Plaintiff was familiar with the premises, and knew that they were used by defendant as a yard for switching cars; that the switching engines passed frequently, changing and mov-ing cars, and that through trains passed over the tracks, and that a person walking upon the tracks or between was liable· to meet or be overtaken by an engine or train at any moment.. He also had seen the defendant company, in moving cars, use what is called a "stake," and knew that in doing busi-ness they pursued that method of handling cars.

On the twenty-seventh of December, 1881, the plaintiff started from his house, which was south of the railroad, to go to his work. It was about 6 o'clock in the morning, and still dark. In doing so he went upon the defendant's right of way at a point about a mile east of the shops where he worked, and started to walk out between the railroad tracks. He walked west a distance of a quarter to half a mile; and, when at the crossing of Vinewood avenue, he was struck by a stake, extending from an engine approaching him on the track south of him, to some freight cars on the track north of him, which were being staked east, and was knocked down and very severely and permanently injured. He saw the en-gine and cars approaching him, but did not see the stake, and attempted to pass between, and met with the accident, as before stated. He was not using Vinewood avenue as a highway, nor was he traveling along it, but he intended to· keep on upon the defendant's right of way to the shops where he was employed. His meeting the engine at that particular· point was a mere coincidence.

The court instructed the jury that upon these facts, in the absence of contributory negligence, the plaintiff was entitled to recover; that staking cars across a public highway was illegal, and rendered the defendant liable for any injury occasioned thereby within the limits of such highway crossing, and it was of no consequence whether the person injured was using the highway for the purpose of travel, or was traveling along the defendant's right of way without any intention to use the highway as such. He also instructed the jury that, if the accident happened without the limits of the street, the plaintiff could not recover.

I cannot accede to the views expressed in the charge of the learned judge. If the defendant would not be liable if the accident happened outside the limits of the highway crossing, it must be because either that there was no negligence on the part of the defendant, or, if negligent, the plaintiff was a trespasser, and defendant owed him no duty, unless it was aware of his presence there, and could by the exercise of care avoid injuring him. But how does the railroad company become guilty of negligence the moment it crosses the line of the highway? . It must be, if at all, because some new or different duty obtains from that which rested upon it before.

Negligence in law is a relative term, and implies the non-observance of, or omission to perform, a duty which is prescribed by law, or it arises from the situation of the parties and circumstances surrounding a transaction. There is no provision of law forbidding the staking of cars across highways in a railroad company's yard or elsewhere. If a duty arises, the non-observance of which would be negligence in defendant to stake cars across Vinewood avenue, it must spring from the situation of the parties and the circumstances of the case. What are these? The railroad company is the owner of its right of way, and has the right of passage and of use, in the ordinary manner, of its tracks at highway crossings. Likewise do the public have a right of

way and of passage across the railroad track to be used and enjoyed in the ordinary manner. These rights are in a sense reciprocal, and must be exercised with a due regard to the rights of each other.

The right of the public in a highway crossing a railroad is simply a right of passage across the railroad. The public, and no individual thereof, have the right to commit a trespass upon the railroad company's property within the limits of the highway crossing. He cannot interfere with the rails or grounds, or obstruct the tracks, simply because it is in the highway, without committing a trespass. The highway crossing is for the purpose of passage from one side of the railroad to the other, and any other use thereof, whether between the tracks or between the rails, is unwarranted. The right of way and of use, when not used or required for the purpose of passage across the railroad, belongs to the railroad company, and may be used by it in the same manner as if no street crossing was there.

It is not, therefore, strictly accurate to say of the plaintiff in this case that,—

" So long as he was on the street, he assumed only the risks which belonged to that place, notwithstanding his design to proceed to a place which he would enter at his peril."

The plaintiff was not using the highway in the ordinary manner. He was not traveling along Vinewood avenue, nor using the avenue for the purpose of crossing the company's right of way. He committed a technical trespass when he entered upon the defendant's right of way, and he continued such trespass from the time he entered upon it until he left it. It was one continuous act. Its nature is determined by the purpose which he says he had,—to travel over defendant's right of way until he reached the shops where he was employed. He was in the execution of this purpose, and upon defendant's right of way, when he was injured. He had no lawful right there, under the circumstances, any more than

he would have had if he had been injured in the act of bur-glarizing a freight car which had been left in the highway. I think the error of the trial judge was in holding that plaintiff was lawfully there, and in applying the principles to his case which would have been proper in the case of one in the lawful use of a highway crossing a railroad.

I think he also erred in holding that staking cars across a public highway was an unlawful act, and negligence *per se*. I think the railroad company owed no greater or different duty to plaintiff, under the circumstances, than it would had he been injured upon defendant's grounds west of the highway.

The judgment must be reversed, and a new trial awarded.

CAMPBELL, C. J., concurred.

SHERWOOD, J. I cannot concur with my brethren in this case in the opinion filed by Justice CHAMPLIN. It is conceded. that Vinewood avenue is a public street in the city of Detroit. The avenue, at the crossing of the defendant's road, was used by the company as switching ground.

The plaintiff, on the morning of the twenty-seventh of December, 1881, at about 6 o'clock, was going to his work. On arriving at the highway, he had occasion to cross it at the place where it was intersected by the defendant's road; and while going across the avenue, and traveling between the tracks, he was struck by a stake attached to an engine or tender on one track, and extending diagonally across to a car on the other, used for the purpose of shoving the car along by the moving engine, a process called "staking cars," and always attended with more than ordinary danger. The morning was dark, but the plaintiff saw the cars, and could have passed between the two tracks without danger from the cars had it not been for the stake.

It was undoubtedly the right of the company to lay its switch track across the avenue within its right of way, and perhaps even use the stake in moving the cars over the high-

way; but, when it does so, it should provide the proper warnings of the increased danger, and, if necessary to prevent injury to persons, keep a proper person at the point of danger to give the warning.

While the plaintiff was traveling across the highway, I am unable to understand why he was not using the avenue as a highway. It certainly is as much the privilege of the citizen to use the highway in crossing it as it is his right to travel its length, and I do not understand that the plaintiff's right to use the avenue was in any way limited or impaired by what might have been his intentions when he left the highway. The right to use the "people's highway" depends upon no such condition.

It is said this plaintiff was a trespasser upon the avenue when the injury occurred. I have been unable to discover from the record that he did anything while thereon except to attempt to walk across it. This would certainly not make him a trespasser. His right to cross it was as well secured and defined as was that of the defendant, and the defendant had no right whatever to interfere with the plaintiff's use of it for that purpose in an improper or unreasonable manner.

I do not concede the doctrine that the only right the public has in a highway where it is crossed by a railroad is the simple right to cross over such railroad when an opportunity is afforded by the company so to do; but, on the contrary, I understand the public has all the rights that can be acquired in the land of an individual for the purposes of travel when it establishes a highway, and a railroad in securing the right to cross such highway, obtains no more than the right to pass over it, with its tracks and cars, in a reasonable and proper manner; that the land at the crossing upon which the tracks and trains pass may be used by the citizens and the public to such extent as may be found convenient or desirable for highway purposes and travel; so long as it does not interfere with the reasonable passage of cars, and the right of making

65 MICH.—13.

needed repairs.    It is the right of passage only for its cars
that the company secures at a crossing, and not storage
ground in the street for cars.

The plaintiff had a lawful right to be in the highway,
where he was when he was injured, and the defendant had
no right to knock him down with the stake in the manner it
did by its cars.    While the plaintiff was between the tracks
upon the highway, he assumed in traveling there the ordinary
risks of both roads which belonged to that place, but noth-
ing more; and, if greater risks were cast upon him in conse-
quence of some extraordinary doings of the company, he
should have been warned of the same a sufficient length of
time before reaching such dangers to enable him, with ordi-
nary diligence, to escape.

I think the learned trial judge, however, went too far in
his charge, when he said to the jury, in substance, that it was
illegal for the defendant to use the stake; that it was negli-
gence on the part of defendant; and upon this ground alone
I concur in the reversal.

MORSE, J., did not sit.