## CITY OF GRAND RAPIDS v ASSFY

1. Appeal and Error—Trial—Final Argument—Preserving Question.

   An attorney's representation in final argument of a fact not in evidence, to be preserved for appeal, requires that the opposing counsel object, obtain a ruling, and then request a curative instruction; a failure to request the curative instruction, after obtaining a ruling on the objection, fails to preserve the issue.

2. Eminent Domain—Witnesses—Appraiser's Valuation—Cross-Examination.

   Cross-examination of plaintiff's appraiser regarding his valuation of defendants' apartment building some three years prior to commencement of condemnation proceedings should have been allowed to determine whether the property had enhanced or diminished in value since that time because it had become public knowledge that defendants' building would be taken for an urban renewal project at least three years before the condemnation proceedings were brought (MCLA 213.389).

3. Eminent Domain—Evidence—Photographs—Admissibility.

   Admission into evidence of certain photographs of defendants' apartment building taken 6-1/2 months after its condemnation date constituted reversible error where their prejudicial effect on the jury far outweighed any probative value; the objectionable pictures depicted damage which would indicate vandalism that testimony indicated may have occurred subsequent to the date of condemnation.

Appeal from Kent, Roman J. Snow, J. Submitted Division 3 November 10, 1972, at Grand Rapids. (Docket No. 13745.) Decided January 18, 1973.

References for Points in Headnotes

[1] 5 Am Jur 2d, Appeal and Error §§ 624–627.
   Offering improper evidence, or asking improper question, as ground for new trial or reversal. 109 ALR 1089.
[2] 26 Am Jur 2d, Eminent Domain §§ 152, 266, 273, 283.
[3] 29 Am Jur 2d, Evidence §§ 1, 249, 251–257.

Petition by City of Grand Rapids against Zaid Assfy, Louise P. Assfy, and others, to condemn defendants' land. Defendants appeal amount of jury award. Reversed and remanded for a new trial.

*Dale W. Rhoades,* for plaintiff.

*Godfrey Vander Werff,* for defendants.

Before: R. B. BURNS, P. J., and HOLBROOK and DANHOF, JJ.

PER CURIAM. Respondents appeal a jury award of $30,500 in their favor.

This is a condemnation case. Respondents appeal and ask for a new trial, predicating such request on three alleged errors committed by the trial court.

Respondents first question the trial court's failure to repress petitioner's counsel's representation in final argument of a fact not in evidence. In Michigan, when such error appears, opposing counsel must take two steps. First, he must object, and then, after obtaining a ruling, must request a curative instruction. *Marr v Saginaw County Agricultural Society,* 364 Mich 373, 377 (1961). Here, counsel failed to take the second step, and has therefore not preserved the issue for appeal.

Respondents also question the failure of the trial court to allow cross-examination of an appraiser with respect to his appraisal of the subject property some three years prior to condemnation.

MCLA 213.389; MSA 8.261(29) states:

"The date of valuation in all proceedings pursuant to this act shall be the date of filing the declaration of taking or the date of commencement of trial, whichever

is earlier. The value of the property, and of any part thereof remaining after the taking, shall be determined with respect to the condition of the property and the state of the market on that date. *Any enhancement or diminution in the value of the property before the proposed taking but not after the taking which is directly attributable to the proposed project or the announcement thereof shall be disregarded in arriving at such value and the property shall be valued in all cases as though the project had not been contemplated.* "(Emphasis supplied.)

The above statute, passed in 1966, reflects the opinion of the Supreme Court in *In re Urban Renewal, Elmwood Park Project,* 376 Mich 311, 318 (1965), wherein the Court stated:

"If an area has been made a wasteland by the condemning authority, the property owner should not be obliged to suffer the reduced value of his property. The converse is also true."

There was testimony in the present case that the city commission approved this urban renewal project May 17, 1966, that letters were sent to the various tenants, and that the project was public knowledge. An appraiser for the city testified that the exterior of the house was in relatively good condition at the time of his first appraisal in 1966 and was very much deteriorated at the time of his second appraisal in 1970.

The respondent Zaid Assfy testified that he expended time, energy, and money to maintain the building up to 1966. Thereafter, tenants moved in and out frequently, so he quit putting money into the building to maintain it, as the city was going to tear it down. There were acts of vandalism due to the partial occupancy of the building.

As the respondents' attorney stated in his argument:

"Perhaps you are thinking of doing this. That is put yourself in a situation of the property owners. Put yourself in their situation. In 1966 they are faced with this urban renewal project and they cannot sell their property. What do you do? This urban renewal project creates an unnatural, unrealistic situation for three years. For more than three years this property could not sell. Therefore, you do not have an actual situation.

\* \* \*

"You have this unrealistic situation. You are faced with a dilemma. What do you do. Spending more money on the property, as a result the property is beginning to deteriorate, the tenants begin to move away. You got other tenants in the building. People who come in from the blighted area of this property and many buildings deteriorated even then.

"There is nothing you could do. You could perhaps close the building but you are still required to make payments on the building. Picture the Assfy's buying this property in 1962, improving it for three years and then suddenly this urban renewal project was thrust upon them. I think the evidence clearly shows that they make *[sic]* these improvements."

In our opinion the trial judge, under the circumstances of this case, should have allowed the respondents' attorney to pursue the appraiser's opinion as to the value of the building in 1966 to determine if "any enhancement or diminution in the value of the property before the proposed taking but not after the taking which is directly attributable to the proposed project", had taken place.

Respondents lastly question the receipt into evidence of certain photographs of the subject property taken 6-1/2 months after the condemnation date. The admissibility of photographs is usually within the discretion of the trial judge. However, photographs which are relevant to a material point in issue may be inadmissible if the possible

prejudicial effect outweighs their probative value. *Anderson v Lippes,* 18 Mich App 281 (1969).

In the present case the testimony indicated that from the date of the condemnation to the date when the objectionable pictures were taken the apartment building was in a state of semivacancy. Doors were left open and people walked in and out of the building without restriction. Some of the pictures depicted damage which would indicate vandalism. The pictures' prejudicial effect on the jury far outweighed any probative value. It was error to admit such photographs.

Reversed and remanded for a new trial. Costs to appellants.