KOVACS v CHESAPEAKE & OHIO RAILWAY COMPANY

Docket No. 68420. Submitted January 5, 1984, at Lansing.—Decided
May 14, 1984. Leave to appeal applied for.

Charles L. Kovacs was struck by a train and killed as he sat in a
truck straddling the railroad tracks. He was in the process of
repairing a drainage ditch on his property alongside the tracks,
and was on a country road crossing the tracks. The train was
traveling at 46 miles per hour and visibility was poor because
of dense fog. Rosemary Kovacs, administratrix of the estate of
Charles Kovacs, deceased, brought an action against the Chesa-
peake and Ohio Railway Company, alleging that the defendant
was negligent in failing to sound a warning bell and whistle as
required and in failing to reduce the speed of the train given
the absence of warnings and the dense fog. The Livingston
Circuit Court, Paul R. Mahinske, J., entered a judgment on a
jury verdict in favor of plaintiff, and the defendant appealed,
raising several allegations of error. *Held:*

1. Decedent's use of the railroad tracks at the crossing was in
an ordinary manner, even though he was not "squarely travel-

REFERENCES FOR POINTS IN HEADNOTES

[1] 65 Am Jur 2d, Railroads § 479.
[2] 5 Am Jur 2d, Appeal and Error § 886.
[3] 65 Am Jur 2d, Railroads § 509.
[4] 65 Am Jur 2d, Railroads § 483.
[5] 65 Am Jur 2d, Railroads § 442.
[6] 75 Am Jur 2d, Trial §§ 580, 610.
[7] 22 Am Jur 2d, Damages §§ 26, 96.
[8] 22 Am Jur 2d, Damages § 88.
  Propriety of taking income tax into consideration in fixing damages
  in personal injury or death action. 16 ALR4th 589.
[9] 22 Am Jur 2d, Damages § 87.
  Effect of anticipated inflation on damages for future losses—modern
  cases. 21 ALR4th 21.
  Changes in cost of living or in purchasing power of money as
  affecting damages for personal injuries or death. 12 ALR2d 611.
[10] 29 Am Jur 2d, Evidence §§ 785-788.
[11] 29 Am Jur 2d, Evidence § 303.
[12] 23 Am Jur 2d, Depositions and Discovery §§ 178, 179.
[13] 29 Am Jur 2d, Evidence § 493 *et seq.*

ing" over the tracks. The trial court did not err, therefore, in refusing to find as a matter of law that the defendant was a trespasser and in denying defendant's motion for a directed verdict premised on the theory of decedent's alleged trespass. The trial court also properly refused to give defendant's proposed jury instruction relating to trespass.

2. The defendant was not required by statute to sound a warning bell at the crossing, but a common-law duty to do so could be found to have arisen by custom. The trial court did not err by denying defendant's motion for a directed verdict based on the lack of a statutory duty to sound a bell or in refusing to instruct the jury that the defendant had no obligation to sound a bell.

3. The court's reading of plaintiff's theory of the case as it related to the requirement of sounding a bell at the crossing was not error requiring reversal.

4. The trial court properly left to the trier of fact the question of whether the defendant's engineer sounded the train's whistle within 660 feet of the crossing as required by statute.

5. The speed of the train alone is not sufficient to support a finding of negligence. However, the circumstances in this case, *i.e.,* the dense fog and the alleged failure to sound a warning and the absence of devices such as signal lights at the crossing, are sufficient to create a question of fact for the jury as to whether the defendant exercised ordinary care in failing to reduce the train's speed.

6. The trial court did not err in refusing to direct a verdict on the question of whether defendant was liable for not providing adequate protection devices at the crossing.

7. The trial court properly refused to read several of defendant's proposed jury instructions which were either inapplicable or incorrectly stated the law. The court also properly substituted an applicable standard jury instruction for one of defendant's proposed instructions.

8. The court's instructions to the jury on the issue of damages were not improper.

9. The trial court did not err in allowing testimony regarding the presence of a school bus near the accident, in allowing the admission of photographs depicting the decedent in the years before his death, or in allowing testimony regarding the decedent's habit of approaching railroad crossings carefully.

10. Defendant's engineer was properly allowed to read the answers in his prior deposition rather than answer spontane-

ously at trial. As an adverse party, the plaintiff was free to make any use of the engineer's deposition.

11. Testimony of a witness regarding the decedent's expected lost earnings, objected to as hearsay, was properly based on facts previously admitted into evidence.

12. The verdict was not excessive and not against the great weight of the evidence.

Affirmed.

1. RAILROADS — PUBLIC CROSSINGS — NEGLIGENCE.

The rights to the use of railroad tracks over public crossings are reciprocal between pedestrians and the railroad and any use by either must be in an ordinary manner.

2. APPEAL — MOTIONS AND ORDERS — DIRECTED VERDICT.

The Court of Appeals views the evidence in a light most favorable to the plaintiff when reviewing a trial court's denial of a defendant's motion for a directed verdict.

3. RAILROADS — WARNING SIGNALS — CUSTOM.

A train approaching a rural railroad crossing is not required by statute to sound its warning bell but where trains have customarily sounded warning bells upon approaching a particular crossing a common-law duty may arise to continue the practice, particularly in conditions of low visibility; the custom at a particular crossing may be established by the testimony of residents who live in the neighborhood or by the testimony of railroad employees (MCL 466.13; MSA 22.272).

4. RAILROADS — WARNING SIGNALS — QUESTION OF FACT.

A railroad is required by statute to sound a warning whistle whenever its trains approach a public railroad crossing outside the limits of a city or village; whether a whistle was sounded on a particular occasion is a matter properly left to the trier of fact (MCL 466.13; MSA 22.272).

5. RAILROADS — NEGLIGENCE — SPEED.

The speed of a train through open countryside, as a matter of law, is not alone sufficient to support a finding of negligence; whether a railroad was negligent in operating a train at its normal speed under conditions of low visibility and without the use of any signal to warn of the train's approach is a question for the finder of fact.

6. TRIAL — JURY INSTRUCTIONS — STANDARD JURY INSTRUCTIONS — REQUESTED JURY INSTRUCTIONS.

A trial court may give jury instructions which are not included in

the standard jury instructions where no standard jury instruction applies; the trial court is obligated to honor written requests for such additional jury instructions so long as the requested instructions properly instruct on the applicable case law (GCR 1963, 516.6[4]).

7. DAMAGES — INTEREST — FUTURE DAMAGES.
   The statute which provides for interest on a money judgment does not apply to reductions of awards of future damages (MCL 600.6013; MSA 27A.6013).

8. DAMAGES — PERSONAL INJURY — TAXATION.
   Damages obtained in a personal injury action are exempt from federal income taxation only to the extent that they represent compensation for personal injury; compensation for such losses as lost wages, lost pension benefits, and other non-personal injury damages is not similarly excluded (26 USC 104[a][2]).

9. DAMAGES — JURY INSTRUCTIONS — INFLATION — FUTURE DAMAGES.
   A trial court's instructions which allow the jury to consider the effects of inflation in determining the present value of an award of future damages are not contrary to law.

10. EVIDENCE — PHOTOGRAPHS.
    The admission of photographs into evidence on the ground that they are more probative than prejudicial is within the discretion of the trial court.

11. EVIDENCE — HABIT — RULES OF EVIDENCE.
    Evidence of a decedent's habit, or regular response, in doing a thing is admissible to prove his conformance with his habit at the time in question (MER 406).

12. EVIDENCE — DEPOSITIONS — ADVERSE PARTIES.
    A deposition of an employee of any party may be used by an adverse party for any purpose (GCR 1963, 302.4[2]).

13. WITNESSES — EVIDENCE — HEARSAY.
    Testimony of a witness which is based on facts earlier admitted properly into evidence is not hearsay.

*C. Robert Beltz,* for plaintiff.

*Cross, Wrock, Miller & Vieson* (by *Gene S. Davis, Craig A. Anderson* and *Robert E. Casey, Jr.*), for defendant.

Before: BRONSON, P.J., and M. J. KELLY and R. S. HOFFIUS,* JJ.

M. J. KELLY, J. Defendant appeals as of right from a jury verdict of $1.5 million in favor of plaintiff, reduced by one-third for the comparative negligence of plaintiff's decedent. We affirm.

## FACTS

On September 30, 1976, plaintiff's decedent was struck and killed by one of defendant's trains as he sat in a rented dump truck straddling defendant's railroad tracks. The decedent, 49-year-old Charles L. Kovacs, and John Hibbard, an employee of Copeland Construction Company, were repairing or deepening a ditch into which water drained from Kovacs's property. The ditch ran alongside defendant's railroad tracks. The accident occurred about a mile and a half west of Fowlerville, Michigan, on a country road known as Potts Road. Immediately prior to impact, the train was traveling at a speed of 46 miles per hour and visibility was severely limited because of dense fog.

Plaintiff's complaint alleged that defendant's negligence had caused the death of her husband. The case proceeded to trial on the following claims: (1) defendant was negligent in failing to sound the warning bell and warning whistle as required by law and (2) defendant was negligent in failing to reduce the speed of the train given the absence of appropriate warning signals, the absence of gates or flashers or other warning devices at the Potts Road crossing and the extremely dense fog.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant raises numerous issues on appeal which we consider separately.

ISSUES

I

Defendant first contends that the trial court erred in denying defendant's motion for a directed verdict made at the close of plaintiff's proofs. Defendant's motion was premised on the theory that decedent was a trespasser on defendant's property and the defendant thus owed no duty to decedent other than to exercise reasonable care and diligence *after* his presence on the tracks was discovered. Because there was no dispute regarding the impossibility of stopping the train within the extremely short distance available once the engineer observed the decedent on the tracks, defendant argues that the trial court erred in not directing a verdict in defendant's favor as a matter of law.

Defendant relies on *Kelly v Michigan Central R Co,* 65 Mich 186; 31 NW 904 (1887), for the proposition that a person who does more than merely walk or travel straight across a railroad track at a public crossing is a trespasser on railroad property for purposes of negligence law. We do not agree with plaintiff's interpretation of *Kelly.* In *Kelly,* plaintiff had been walking along defendant's railroad tracks for a quarter to half a mile when he came upon a railroad yard which was intersected by a public road. While in the yard and on the public road, plaintiff was injured by a "stake" connecting an engine on one track with freight cars on another. Apparently the railroad was engaged in a process whereby an engine pushes or pulls a railroad car located on a parallel track by

the attachment of a rod or stake to the powerless car. The rods or stakes are barely visible in the darkness or semidarkness. As plaintiff Michael J. Kelly (the identity of names between that plaintiff and this author is purely coincidental since the author's ancestors were still in Ireland) was walking between two tracks through the yard, he was struck and injured by one of these rods.

The *Kelly* trial court ruled that the practice of staking constituted negligence on the part of the railroad. On appeal, the Supreme Court disagreed and remanded the case for a new trial.

In its opinion, the Supreme Court discussed the reciprocal rights and duties of pedestrians and railroads:

"The railroad company is the owner of its right of way, and has the right of passage and of use, in the ordinary manner, of its tracks at highway crossings. Likewise do the public have a right of way and of passage across the railroad track to be used and enjoyed in the ordinary manner. These rights are in a sense reciprocal, and must be exercised with a due regard to the rights of each other.

"The right of the public in a highway crossing a railroad is simply a right of passage across the railroad. The public, and no individual thereof, have the right to commit a trespass upon the railroad company's property within the limits of the highway crossing. He cannot interfere with the rails or grounds, or obstruct the tracks, simply because it is in the highway, without committing a trespass. The highway crossing is for the purpose of passage from one side of the railroad to the other, and any other use thereof, whether between the tracks or between the rails, is unwarranted." 65 Mich 190-191.

Defendant argues that the "right of passage" language implies that members of the public will be considered trespassers on the rails unless execut-

ing a traverse across tracks intersecting a public crossing.

In undercutting defendant's interpretation of the holding in *Kelly,* we need look no further than *Fehnrich v Michigan Central R Co,* 87 Mich 606; 49 NW 890 (1891), decided only four years after the release of *Kelly.* In *Fehnrich,* a 14-year-old boy had been walking along a public street when he came upon railroad tracks intersecting the street. As he was midway over the tracks, the boy decided to pursue an alternate route and took two steps along the tracks when he was struck by a railroad car slowly moving in his direction. The court specifically refused to construe *Kelly* as authority for the rule that "a man is a trespasser [on a railroad track] unless he travels squarely across them" and instead held that whatever rule of trespass could be gleaned from *Kelly* was limited to the facts of that case. *Kelly* has since been cited (1) for the rule that pedestrian and railroad rights to the use of railroad tracks over public crossings are reciprocal and that any use by either party must be in an ordinary manner, *Fish v Grand Trunk Western R Co,* 275 Mich 273; 266 NW 349 (1936), *on rehearing* 275 Mich 718, 720; 269 NW 568 (1936); (2) for the rule that the railroad is not the insurer of the public's safety, *Wiles v New York Central R Co,* 311 Mich 540; 19 NW2d 90 (1945); and (3) for the rule that railroads own the right-of-way and have first right of passage. *Bauman v Grand Trunk Western R Co,* 376 Mich 675, 692-693; 138 NW2d 285 (1965) (Justice BLACK's *concurring opinion).*

In the instant case, decedent was clearly not "squarely traveling" across the railroad tracks when he was struck by defendant's train. According to the testimony of the only eyewitness to the

accident, John Hibbard, the two men were engaged for the second consecutive day in clearing away a ditch that drained decedent's fields. Hibbard operated a backhoe which scooped out dirt and debris from the ditch and deposited it in the dump truck which the decedent then drove away to empty. The ditch ran in an east-west direction, parallel to the railroad tracks, and was separated from the tracks by a somewhat narrow strip of land. Potts Road ran in a north-south direction. According to Hibbard's testimony decedent would drive the dump truck north on Potts Road up to and just over the railroad crossing, then back over the tracks, turning the truck at an angle so as to position it on the strip of land between the tracks and the ditch.

Hibbard testified that he arrived at the work site on his second day on the job just after the decedent and observed decedent pull his truck up to and over the tracks as he had done on the previous day. As decedent was backing over the tracks or momentarily stopped on them, Hibbard heard a train whistle for the first time despite the fact that he had approached the crossing with his window down, deliberately listening and looking for signs of a train. When he looked in the direction of the whistle, he saw a train emerging from the fog approximately 50 feet east of the crossing.

Given our interpretations of *Kelly* and *Fehnrich* and viewing the evidence in a light most favorable to plaintiff, as we must in reviewing a trial court's denial of a motion for directed verdict, *Rickrode v Wistinghausen,* 128 Mich App 240, 244; 340 NW2d 83 (1983), we cannot say that the trial court erred in refusing to find as a matter of law that the decedent was a trespasser on defendant's property. Decedent's use of defendant's railroad tracks at Potts Road was in an ordinary manner.

Defendant also claims that the trial court erred in refusing to instruct the jury as follows:

"The right of the public in a highway crossing a railroad is simply a right of passage across the railroad, and no individual has the right to commit a trespass upon the railroad company's property within the limits of the highway crossing, which is for the purpose of passage from one side of the railroad to the other, and any other use thereof, whether between the tracks or rails is unwarranted. The right of way and of use, when not used or required for such passage, belongs to the railroad company, and may be used by it in the same manner as if no street crossing was there. Therefore, if you find that plaintiff-decedent, Mr. Kovacs[,] was using the railroad's right of way for a purpose other than as a traveler from one side to the other, then you must find Mr. Kovacs was a trespasser."

Given our rejection of defendant's construction of *Kelly,* we find no error in the trial court's refusal to read this instruction to the jury.

## II

Defendant next contends that it had no duty to sound a warning bell as the train approached the Potts Road crossing and that the trial court thus erred in allowing the jury to consider defendant's negligence on this ground. Specifically, defendant contends that the trial court erred in (1) refusing to grant defendant's motion for directed verdict on its alleged negligence in failing to sound the bell, (2) refusing to instruct the jury that defendant was not required by law to sound a warning bell, and (3) reading to the jury, over objection, plaintiff's theory of the case in which plaintiff stated that defendant was required by law to sound a warning bell.

It is true that defendant was not required by

statute to sound a warning bell as it approached the Potts Road crossing. MCL 466.13; MSA 22.272 provides:

"A bell of at least 30 pounds weight, and a steam or air whistle or siren, shall be placed on each locomotive engine, and except in incorporated cities and villages said whistle or siren shall be twice sharply sounded at least 40 rods before any highway crossing is reached, and at street crossings in incorporated cities and villages the bell shall be rung continuously until the crossing is passed, under a penalty of $100.00 for each neglect."

At trial, neither the plaintiff nor the trial court construed this statute as imposing a duty upon defendant to sound a warning bell as the train approached the site of the accident since there was no dispute but that the Potts Road crossing is outside the limits of a village or incorporated city. However, the trial court refused to direct a verdict in favor of defendant on the bell issue. Plaintiff argued and the trial court held that the jury could find defendant obligated by custom to sound a warning bell.

A train approaching a rural railroad crossing may be required under a common-law duty to sound its warning bell. *Beasley v Grand Trunk Western R Co,* 90 Mich App 576, 591-592; 282 NW2d 401 (1979). Where trains have customarily sounded warning bells upon approaching a particular crossing, a duty may arise to continue that practice, particularly where there is heavy fog. Custom may be established by the testimony of residents who live in the neighborhood of the crossing or by the testimony of railroad employees. *Beasley, supra,* p 593.

Defendant does not dispute that a common-law

duty may sometimes arise requiring trains to sound warning bells upon approaching a rural railroad crossing. Defendant argues instead that plaintiff failed to introduce any evidence to support a finding that such a duty existed in this case. While we agree that plaintiff did not thoroughly develop this aspect of her negligence case at trial, we find sufficient evidence to support the trial court's denial of defendant's motion for directed verdict. The engineer of the train, Leo J. Norman, testified by deposition that prior to crossing the road located before Potts Road, he activated the warning bell and left it on through Potts Road "as required". Elsewhere in the deposition, Norman testified about a pamphlet or rule book which was disseminated to railroad employees and which described various duties of the employees in operating the train. The head brakeman, Dennis Kehoe, testified by deposition taken two weeks after the accident that the engineer had activated the warning bell before the train approached the Potts Road crossing. At trial, Kehoe could not independently recall the engineer's actions in ringing the bell but did recall hearing the bell once he had departed from the train after the accident. While the testimony of the engineer and the brakeman is generally favorable to the defendant as evidence that the warning bell was sounded, the testimony may also support an inference that defendant's train engineers were instructed to and did, as a matter of custom, sound the warning bell as they approached the Potts Road crossing. We thus find no error in the trial court's denial of defendant's motion for directed verdict on this aspect of plaintiff's negligence claim.

We also conclude that the trial court did not err in refusing to instruct the jury that defendant had

no obligation to sound its warning bell. While the trial court failed to specifically instruct on a common-law duty, the court did instruct that the statute only required defendant to sound a warning whistle.

Defendant also objects to the trial court's reading of the following portion of plaintiff's theory of the case:

"There was a whistle post, a concrete pillar, set 1356 feet east of the crossing at which point the engine should have begun to blow its whistle and ring its bell.

"John Hibbard never heard a bell being operated and the whistle was blown according to his testimony, only an instant before the accident. The law requires that a bell be sounded and a whistle or siren be sounded at least 666 feet or 40 rods from the crossing."

While we agree that the statement as read may have improperly implied to the jury that defendant was required by statute to sound the warning bell 666 feet from the railroad crossing, we do not believe that any reversible error resulted. Plaintiff's theory of the case does not expressly state that the duty to sound a bell was imposed by statute. Moreover, the trial court explained to the jury that each party's theory of the case was simply a theory and was not binding on facts or law. The court also gave the standard instructions on attorney comments. We conclude that if error resulted in the trial court's reading of plaintiff's theory of the case, that error was harmless beyond a reasonable doubt given the trial court's instructions viewed as a whole.

### III

Defendant next alleges error in the trial court's

refusal to direct a verdict in favor of defendant on plaintiff's claim that defendant was negligent in failing to sound its warning whistle upon approaching the Potts Road crossing and in failing to reduce its speed given the absence of bell and whistle warnings, the absence of crossing protection devices and the dense fog conditions.

Defendant is required by statute to sound a warning whistle whenever its trains approach a public railroad crossing outside the limits of a city or village. MCL 466.13; MSA 22.272. We agree with the trial court's finding that the Potts Road crossing was public and not private and that defendant thus had a statutory duty to sound its warning whistle within 666 feet of the crossing. Potts Road provides access to at least four residences and bears normal public traffic such as school buses, farm equipment, and residential traffic. In this way, Potts Road is to be distinguished from the private road in *Beasley, supra,* which only provided access to one residence.

Whether the defendant's engineer did sound the train's warning whistle within 666 feet of the Potts Road crossing was a matter properly left to the trier of fact. John Hibbard testified that on the day before the accident he and the decedent worked on the drainage ditch and observed trains pass by three or four times. On that day, Hibbard heard the train whistles before he observed the trains despite operating a backhoe which made considerable noise. Hibbard testified that on the morning of the accident he did not hear the whistle until the train was only 50 feet away despite the fact that he had slowed down as he approached the tracks and had looked both ways and listened for sounds of a train. Hibbard's testimony was thus not inadmissible negative testimony. *Dal-*

*ton v Grand Trunk Western R Co,* 350 Mich 479, 484, 488; 87 NW2d 145 (1957). The trial court did not err in allowing the jury to determine whether defendant was negligent in failing to sound a warning whistle as it approached the railroad crossings.

Neither did the trial court err in refusing to direct a verdict on the issue of defendant's speed in operating the train at 46 miles per hour at the time of the accident. The train had left Fowlerville where the maximum speed was 35 miles per hour and was increasing its speed to 50 miles per hour, the rate at which defendant's trains usually traveled over rural tracks.

We agree with defendant that, as a matter of law, the 46 or 50 mile per hour rate of speed is not alone sufficient to support a finding of negligence. In *Hudson v Grand Trunk Western R Co,* 227 Mich 1, 2-3; 198 NW 339 (1924), the Supreme Court held that "[a] rate of 40 or 45 miles an hour in the open country would not be negligence, as a matter of law", and in *Ommen v Grand Trunk Western R Co,* 204 Mich 392, 398-399; 169 NW 914 (1918), the Court affirmed the trial court's instruction to the jury which stated that train speeds of 40, 50, or 60 miles an hour over open country tracks do not constitute negligence.

Plaintiff, however, does not simply argue that defendant was negligent in operating its train at 46 miles per hour. Plaintiff argues instead that the 46 miles per hour rate of speed was negligent in light of several attendant circumstances: (1) the dense fog, (2) the absence of any warning whistle or bell, and (3) the absence of protection devices such as crossguards or signal lights at the railroad crossing. In both *Hudson* and *Ommen,* the Supreme Court noted that while speeds of 40 to 60

miles an hour over country tracks did not constitute negligence per se, such speeds may be negligent when considered in light of other circumstances:

> "It is true that there was no village ordinance with
> reference to the speed of trains operating across this
> crossing, but we do believe that the situation presented
> brings it within the rule which says that where there
> are special circumstances and conditions which should,
> and ordinarily would, induce an ordinarily prudent
> person to exercise greater caution, the question as to
> whether or not the train was operated with ordinary
> care and prudence with reference to speed is one for the
> jury." 204 Mich 400-401.

We believe that the attendant circumstances in
this case are sufficient to raise a question of fact
for the jury as to whether defendant exercised
ordinary care in failing to reduce the train's speed.
The key question here is whether defendant was
negligent in maintaining normal speed under conditions of low visibility *absent the use of any kind
of device or signal to warn of the train's approach.*
In other words, while adverse weather conditions
alone may not support a finding of negligent train
speed, weather conditions plus failure to warn
may. The trial court did not err in this case in
reserving for the trier of fact the question of
whether defendant's train speed under the circumstances was consistent with the defendant's duty
to exercise ordinary care in its use of the railroad
tracks.

Finally, we reject defendant's argument that the
trial court erred in refusing to direct a verdict on
defendant's failure to provide adequate protection
devices at the Potts Road crossing. It is true that
railroads may not, without state authorization,
install or maintain "any sign, signal, marking,

device, blinking, oscillating or rotating light or lights, decoration or banner which is or purports to be or is in imitation of or resembles or which can be mistaken for a traffic control device or railroad sign or signal". MCL 257.615; MSA 9.2315. *Masters v Grand Trunk R Co,* 13 Mich App 80, 82-83; 163 NW2d 661 (1968); *People v Grand Trunk R Co,* 3 Mich App 242, 246; 142 NW2d 54 (1966). But plaintiff did not assert at trial that defendant was liable for inadequate protection devices and the trial court properly instructed the jury on defendant's non-liability in this regard.

While plaintiff's counsel did refer during closing argument to the inadequate protection devices at Potts Road, his purpose in doing so was to illustrate the importance of the bell and whistle warnings, particularly under such heavy conditions of fog. Viewed in this context, we find no unfair prejudice to the defendant.

IV

Defendant next contends that the trial court erred in refusing to read eight requested non-standard jury instructions. GCR 1963, 516.6(4) authorizes a trial court to give instructions not included in the standard jury instructions and the trial court is obligated to honor written requests for additional jury instructions so long as the instructions properly instruct on applicable case law. Failure to do so constitutes error. *Device Trading, Limited v Viking Corp,* 105 Mich App 517, 522; 307 NW2d 362 (1981), *lv den* 414 Mich 960 (1982).

We have reviewed the eight instructions requested by defendant and denied by the trial court. We find that four of these instructions were not applicable to the facts or issues developed at trial in this case. Plaintiff did not contend that

defendant was the insurer of the public's safety at highway railroad crossings and did not suggest that defendant owed a greater duty of care to the decedent since decedent had conducted himself in a negligent manner. In fact, it was plaintiff's position at trial that decedent was not negligent in working on the drainage ditch in the fog. Nor was the jury asked to determine whether defendant was negligent in failing to stop the train once the engineer observed the decedent's truck on the tracks. It was undisputed that, because of the dense fog, decedent was not visible to the engineer until well beyond the critical distance required to bring the train to a halt. Plaintiff's negligence claims were based solely on defendant's failure to sound the required warning signals or failure to reduce speed in light of the attendant circumstances. Finally, there was no evidence introduced at trial tending to establish that decedent was "stalled" on the railroad tracks. The trial court thus did not err in refusing to read defendant's requested instructions nos. 27, 28, 30, and 32.

We further conclude that three of the remaining four instructions improperly stated the law. Defendant's instructions nos. 33, 34, and 35 were essentially premised on the old "stop, look, and listen" rule developed in automobile/buggy and carriage cases and now abandoned in Michigan. *Beasley, supra,* p 582.

The remaining instruction requested by defendant and rejected by the trial court read as follows:

"I charge you that the plaintiff-decedent, Mr. Kovacs[,] had a duty to exercise as much caution about remaining on the tracks as going on [to] them."

While this instruction is not an incorrect state-

ment of the law, we find that the trial court's rejection of this instruction in favor of a standard jury instruction, SJI 10:04, was proper and adequately apprised the jury of decedent's duty of care in crossing over the railroad tracks. We find no abuse of discretion in the trial court's choice of the standard jury instruction over defendant's requested instruction. *Range v Gorosh,* 121 Mich App 1, 10; 328 NW2d 128 (1982), *vacated on other grounds* 417 Mich 1059 (1983).

## V

Defendant also challenges the trial court's instructions on damages on the ground that the instructions were incomplete, inaccurate, and resulted in an unfairly inflated jury verdict in favor of plaintiff. We are assaulted so regularly with multi-million dollar verdicts in personal injury cases that the "inflated" claim on this wrongful death award amount lacks any particular meaning and is not seriously considered in our analysis. We focus instead on the legal accuracy of the instructions given and, where there is error, whether the error is reversible or harmless.

Defendant first objects to the trial court's reading of standard jury instruction SJI 53:03 which instructed the jury to reduce its award for future damages by five percent. Defendant argues that the court should instead have instructed the jury to reduce any future damages award by a rate of 12%, pursuant to MCL 600.6013; MSA 27A.6013. We disagree and choose instead to follow the recent opinion of this Court in *Goins v Ford Motor Co,* 131 Mich App 185; NW2d (1983), in which it was held that MCL 600.6013; MSA 27A.6013 does not apply to reductions of future damages awards.

The trial court thus did not err in reading SJI 53:03.

Defendant also contends that the trial court erred in refusing to instruct the jury that any sum of money awarded to plaintiff would not be subject to income tax. Defendant's requested instruction is based on *Norfolk & Western R Co v Liepelt,* 444 US 490; 100 S Ct 755; 62 L Ed 2d 689 (1980), *reh den* 445 US 972; 100 S Ct 1667; 64 L Ed 2d 250 (1980), in which the United States Supreme Court held that a similar requested instruction was improperly denied in an action under the Federal Employer's Liability Act. The Internal Revenue Code provision which exempts from taxation damages obtained in personal injury actions is 26 USC 104(a)(2). Under this statute, only compensation for personal injuries is exempted from gross income. Compensation for lost wages, lost pension benefits, and other non-personal injury damages, however, is not similarly excluded under this statute. *Wolfson v Comm'r of Internal Revenue,* 651 F2d 1228 (CA 6, 1981); *Stanford v Comm'r of Internal Revenue,* 297 F2d 298 (CA 9, 1961). Since plaintiff in this case sought damages for loss of financial support, loss of pension benefits, loss of gifts and loss of investment and industry, the trial court did not err in refusing to instruct on the non-taxability of any damages awarded by the jury in favor of plaintiff.

Defendant also alleges error in the trial court's modification of standard jury instruction SJI 45:02 as follows:

"If you decide that the plaintiff is entitled to damages, you shall give such amount as you decide to be fair and just, under all the circumstances, to those persons represented in this case. Such damages may

include the following items to the extent you find they have been proved by the evidence:

"Losses suffered by Rosemary Kovacs, Mary Ann, Lois and Kathleen Kovacs, as a result of Charles L. Kovacs, including loss of financial support, loss of service, loss of gifts or other valuable gratuities, loss of parental training and guidance, loss of society and companionship, *loss of pension benefits, loss of investment and industry, loss of sexual relationship with her husband by Rosemary Kovacs, damage to the family social unit.*

Defendant contends that the addition of the last four emphasized elements resulted in an unfairly inflated verdict in favor of plaintiff.

While we agree that the four elements of damages added by the trial court are essentially subcategories of the five elements contained in SJI 45:02, we find the instruction given, though repetitive, neither confusing nor incorrect nor unduly prejudicial to the defendant. We will not reverse on the basis of this instruction.

Finally, defendant contends that the trial court erred in reading, over defendant's objection and at plaintiff's request, the following instruction:

"You jurors may, in considering the reduction of the verdict rendered in this matter to its present worth, further consider the effect of inflation on the reduction to present worth and the amount of damages which you find the plaintiffs have suffered.

"It is for you to determine from the evidence whether in determining damages, the damage should be reduced to the value of today's dollar due to the changes taking place in the purchasing power of money and the cost of living as well as inflationary forces."

While Michigan appellate courts have rejected this inflationary argument as a basis for excusing a trial court's failure to instruct *sua sponte* on the

necessity of reducing to present value damages for future losses, *Grewe v Mount Clemens General Hospital,* 404 Mich 240, 259; 273 NW2d 429 (1978); *Freeman v Lanning Corp,* 61 Mich App 527; 233 NW2d 68 (1975), the trial court's instruction was not contrary to any law of damages in Michigan. We thus find no error in the trial court's instruction on inflation.

## VI

Defendant raises one final objection to the instructions given at trial. The court instructed the jury on the presumption set forth in standard jury instruction SJI 10:08:

"Because Charles L. Kovacs has died and cannot testify, you jurors must presume that he was in the exercise of ordinary care for his safety at and before the time of the occurrence, unless you find the presumption is overcome by the evidence.

"In deciding whether the presumption is overcome, you must weigh the presumption with all of the evidence. If, after so weighing, you are unable to decide that the presumption has been overcome, then you must find that Charles L. Kovacs was not negligent."

Defendant argues that the evidence clearly overcame the presumption of due care on the part of the decedent and the trial court's reading of SJI 10:08 thus constituted reversible error.

We decline to consider defendant's argument since the jury's action in reducing the award by one-third due to decedent's comparative negligence clearly evidences the harmlessness of the instruction, even assuming that it was erroneously given. The jury obviously found that defendant had overcome the presumption that decedent was not negligent.

VII

Defendant next argues that certain evidence introduced at trial was irrelevant, improper, and so unfairly prejudicial to the defendant that a new trial is required. We separately consider each of these evidentiary objections.

Defendant first challenges the admission at trial of testimony regarding the presence of a school bus carrying children over the Potts Road crossing just prior to the accident. At the beginning of trial, defendant moved to exclude all reference to the school bus. The trial court denied defendant's motion without prejudice to defendant's right to renew the objection as the evidence was offered. While defendant failed to pursue the objection at trial, we nevertheless afford review to determine whether manifest injustice resulted.

We have carefully reviewed each reference in the testimony to the presence of a school bus near the railroad crossing, as cited in defendant's brief on appeal, and we find no error. All of the witnesses who testified about the presence of the school bus did so briefly and casually and in reference to some other relevant matter. In describing the thickness of the fog, a sheriff's deputy explained that while rushing to the scene of the accident he could travel only 35 miles per hour and, even then, narrowly avoided a collision with a school bus which was backing out of a driveway and which he was unable to see because of the dense fog. John Hibbard was asked to describe what he saw as he approached the Potts Road crossing moments before the accident and explained that one of the things he saw was a school bus heading toward him out of the fog from the direction of the crossing. A resident near the crossing testified that she learned of the accident

from John Hibbard not very long after she had put her son on the school bus.

We conclude that none of the objected-to testimony was injected for improper purposes. In fact, some of the school bus testimony was relevant to a clearer understanding of material facts, such as the density of the fog or the public nature of Potts Road. References to the school bus by plaintiff's attorney in closing argument were limited to the context in which the testimony was introduced and do not appear to have been injected to inflame the passions of the jury.

Defendant next alleges reversible error in the introduction of 14 photographs of the decedent as a youth, in the paratroopers, on his wedding day and with his children. Defendant argued at trial and argues on appeal that the photographs were irrelevant to any material fact since photographs cannot depict family relationships, which were not, in any event, contested and that introduction of the photographs was so prejudicial as to result in an unfair trial to the defendant. The trial court denied defendant's motion to exclude the evidence on the ground that the photographs depicted the decedent in natural settings and revealed the nature of the loss suffered by plaintiff and her daughters. The court further stated that the photographs were relevant to damages despite the fact that family relationships were uncontested.

As with all evidence, the admission of photographs on the grounds that they are more probative than prejudicial is within the discretion of the trial court. MRE 403; *City of Grand Rapids v Assfy,* 44 Mich App 473, 476; 205 NW2d 502 (1973). It is clear from the record in this case that the trial court exercised its discretion in ruling the photographs admissible. We find no abuse in the

exercise of that discretion since the photographs were calmly described by the plaintiff who does not appear to have created a dramatic scene in the courtroom upon viewing the photographs. Nor can we say that the photographs were completely irrelevant to any material issue of fact, such as damages suffered by plaintiff. We find no error. See *Amedeo v Grand Rapids & Indiana R Co,* 215 Mich 37, 55; 183 NW 929 (1921); *Carreras v Honeggers & Co, Inc,* 68 Mich App 716, 724-725; 244 NW2d 10 (1976).

Defendant next challenges the admission of testimony regarding the decedent's habit of approaching railroad crossings in a prudent and careful manner. Defendant failed to object to the introduction of this evidence at trial and argues on appeal that the evidence was inadmissible reputation testimony rather than admissible habit testimony. *McNabb v Green Real Estate Co,* 62 Mich App 500, 510-511; 233 NW2d 811 (1975), *lv den* 395 Mich 774 (1975). We have reviewed all of the challenged testimony and conclude that it was properly admitted as evidence of the decedent's habit, or regular response, in approaching and in traveling over railroad crossings. MRE 406. We find no error.

Fourth, defendant complains of the admission of Hibbard's testimony regarding his prior experience with trains operating in the vicinity of the Potts Road crossing. Hibbard testified that, two years prior to the accident, he had been employed by a fertilizer company at a facility located 2-1/2 miles east of the Potts Road crossing, halfway between Potts Road and the whistle post. According to Hibbard, the trains would often pass by the fertilizer plant and the warning whistle was not sounded until the train was nearly upon the work-

ing men. On several occasions, workers narrowly avoided being run down by the trains.

When defendant objected to the admission of this testimony, plaintiff responded that the evidence was relevant to Hibbard's particular attentiveness to the sound of train whistles while working near the railroad tracks, particularly on the day of the accident, and the trial court agreed. Hibbard's attentiveness is clearly probative of the credibility of his testimony regarding the failure of defendant to sound its warning whistle on the day of the accident. We do not believe that the probative value of this evidence was outweighed by its prejudicial effect on the defendant since defendant was required by statute to sound its warning whistle only 660 feet before crossing Potts Road. The whistle post was located more than 1300 feet east of Potts Road so that failure to sound the whistle until midway between the post and the road does not constitute evidence that defendant violated the statute. We find no abuse of discretion in the trial court's admission of this evidence.

Defendant's fifth evidentiary challenge is to the trial court's grant of plaintiff's request to have defendant's engineer, Leo Norman, read the answers to his entire deposition rather than testify spontaneously to plaintiff's questioning. While we recognize that such a practice is somewhat unusual, we cannot say that error resulted given the scope of the rule on the use of all or any part of a deposition of an employee of an adverse party for any purpose. GCR 1963, 302.4(2). Defendant had ample opportunity to expand Leo Norman's testimony on cross-examination or to put him on the stand in defendant's presentation of its own proofs. We find no error.

Finally, defendant objects to the admission of

the opinion testimony of a nonexpert witness, Rosemary Klinger, regarding the economic value of decedent's loss of life. Defendant complains that Klinger's testimony was based on hearsay data and that Klinger gave opinion testimony on matters which were not within her personal knowledge.

At trial, plaintiff attempted to introduce Klinger as an expert witness. Upon examination on her qualifications, Klinger testified that she was a "human life value consultant". Following extensive questioning by both sides, the trial court declined to qualify her as an expert:

"I am going to let her testify. But I am going to indicate to this jury that I do not consider her to be an expert witness, but she does have some expertise, some experience in areas that most people do not have. And that she has an ability, apparently, to read census reports, Department of Agriculture statistics, what it costs to raise a kid, what it costs to run this and that and so forth. And she can pass this information on to assist the jury.

"And like any other witness, if she were an expert witness, the jury could be getting a charge they do not have to believe that testimony. They can reject, accept, do whatever.

"Rule 701 covers it, in my opinion. We have a person who has some knowledge over and above what the common ordinary person would have, but not to the extent she would be an expert."

Klinger then went on to testify that as a tinsmith enjoying continued skilled trade employment with the Oldsmobile Division of General Motors Corporation, decedent would have earned $687,787 from the time of his death until retirement at age 65. Klinger further testified that decedent would have earned retirement benefits of $130,539 had he

lived out his life expectancy of 78 years. She estimated a 10-1/2% rate of growth in decedent's real estate investments and estimated the economic value of services regularly supplied to the family by the decedent, including bookkeeping, accounting, home improvements, repairs, carpentry, auto repairs, machinery repairs, and grocery shopping. The total economic loss to the decedent's family as a result of his death was estimated at $1,064,929. Klinger's figures were based on employment records, census data, standard mortality tables, income tax returns, decedent's farm ledgers and books, and local wage rates. Klinger did not attempt to transform into economic terms any noneconomic losses suffered by plaintiff and her family as the result of the tragedy.

On appeal, defendant claims that the admission of Klinger's testimony constituted reversible error because it was based on hearsay data—documents not personally prepared by her. Defendant, however, raised only one hearsay objection at trial regarding Klinger's testimony and that objection was to Klinger's reliance on the decedent's employment records and on wages earned by an Oldsmobile tinsmith from 1977 through 1981. We thus consider only that hearsay objection properly preserved for appellate review. *Tucker v Sandlin,* 126 Mich App 701, 706; 337 NW2d 637 (1983).

Prior to the introduction of Klinger's testimony at trial, Daniel Tibbits testified that he was a senior supervisor of payroll and benefit records at Oldsmobile, decedent's former employer. Tibbits provided the pay rates earned by Kovacs prior to his death as well as the pay rates earned by Oldsmobile tinsmiths after his death and until 1981. Tibbits also testified that decedent and all tinsmiths regularly worked overtime as needed.

We thus find that Klinger's testimony regarding the value of decedent's lost wages was properly based on facts admitted earlier into evidence. We find no error.

## VIII

Defendant next contends that the jury's verdict was excessive and against the great weight of the evidence. Given our disposition of the other issues raised by the defendant on appeal, we conclude that the verdict was within the range of evidence introduced at trial and must be upheld. *Decker v Norfolk & Western R Co,* 81 Mich App 647, 658-661; 265 NW2d 785 (1978), *lv den* 403 Mich 845 (1978).

## IX

We find no manifest injustice, no "cumulative error" effect; on the contrary, defendant received a fair trial with due process and a just damage award—although adverse. As in most trials, somebody wins and somebody loses.

Affirmed.